# CASE NO. 23-50305

## UNITED STATES COURT OF APPEALS

## FIFTH CIRCUIT

---

## CAMILO RAMIREZ

**Plaintiff - Appellant**

**v.**

## PLAINS ALL AMERICAN GP, L.L.C

**Defendant - Appellee**

---

## On Appeal from the United States District Court for the Western District of Texas, Pecos Division

---

## BRIEF FOR PLAINTIFF-APPELLANT
## CAMILO RAMIREZ

---

Holly B. Williams
**WILLIAMS LAW FIRM, P.C.**
1209 W. Texas Ave.
Midland, TX 79701
432-682-7800; 432-682-1112 (fax)
holly@williamslawpc.com

Kyla Gail Cole
**NEILL LEGLER COLE, PLLC**
300 Oak Lawn Ave., Ste. 425
Dallas, TX 75219
214-748-7777; 214-748-7778 (fax)
kyla@nlcemployeelaw.com

**ATTORNEYS FOR
PLAINTIFF-APPELLANT
CAMILO RAMIREZ**

## **CERTIFICATE OF INTERESTED PERSONS**

(1)    Camilo Ramirez v. Plains All American GP, L.L.C., Case No. 23-50305, In the United States Court of Appeals for the Fifth Circuit

(2)    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

A. Parties:

    Plaintiff – Appellant:        Camilo Ramirez

    Defendant – Appellee:        Plains All American GP, L.L.C.

B. Attorneys:

    For the Plaintiff-Appellant:        Holly B. Williams
                                        WILLIAMS LAW FIRM, P.C.
                                        1209 W. Texas Avenue
                                        Midland, Texas 79701

                                        Kyla Cole
                                        NEIL LEGLER COLE, PLLC
                                        300 Oak Lawn Ave., Ste. 425
                                        Dallas, TX  75219

    For the Defendant-Appellee:        Samuel J. Stennis
                                        Tyler J. Eyrich
                                        COTTON, BLEDSOE, TIGHE & DAWSON, P.C.
                                        500 W. Illinois Ave., Sute. 300
                                        Midland, TX 79701

                                        /s/ Holly B. Williams
                                        Attorney of Record for
                                        Plaintiff-Appellant Camilo Ramirez

## **STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellant Camilo Ramirez would show that the two simple errors in this case deprived him of a fair trial and require reversal. Mr. Ramirez requests oral argument to establish that the cat's paw theory of causation, adopted by the U.S. Supreme Court in *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011) for USERRA claims, and this Court in *Zamora v. City of Houston*, 798 F.3d 326 (5th Cir. 2015) for Title VII retaliation claims, should be extended to age discrimination claims under the Age Discrimination in Employment Act (ADEA).

# **TABLE OF CONTENTS**

**CERTIFICATE OF INTERESTED PERSONS** ...................................................ii

**STATEMENT REGARDING ORAL ARGUMENT** .........................................iii

**TABLE OF CONTENTS** .................................................................................iv

**TABLE OF AUTHORITIES**............................................................................vi

**STATEMENT OF JURISDICTION** .................................................................. 1

**STATEMENT OF THE ISSUES** ........................................................................ 2

**STATEMENT OF THE CASE** ........................................................................... 4

I.      Ramirez works for Plains for almost 25 years............................................ 4

II.     Plains fires the two oldest drivers in the Pecos District. ........................... 5

III.    The managers in the field make age-related comments,
        fire Ramirez, and replace him with a driver who is more
        than 20 years younger than him................................................................ 5

IV.     Managing Director of U.S. Trucking David Danielson rubberstamps
        the decision.............................................................................................. 8

V.      Younger drivers are not fired for the same or similar conduct. ............... 9

**SUMMARY OF THE ARGUMENT** ................................................................. 10

**ARGUMENT** .................................................................................................. 12

I.      Ramirez was deprived of a fair trial when the district court
        denied his *Batson* challenge. .................................................................. 12

        A.      Ramirez established a prima facie case of discriminatory
                strikes and/or the prima facie case was mooted when Plains
                gave race neutral reasons for its strikes........................................ 14

B.    **Plains' explanation that it struck Juror Number 15 because he was "wishy washy" is a pretext for discrimination because the other prospective juror who might influence him was excused.** ........................................................................ **14**

C.    **Plains' explanation that it struck Juror Number 17 because she "didn't have a job" is a pretext for discrimination because her juror questionnaire was blank, and Plains' counsel did not ask her any questions.** ............................ **18**

II.   **Ramirez was deprived of a fair trial when the district court denied his request for a cat's paw instruction.** ........................ **20**

**CONCLUSION AND PRAYER** ..........................................................**27**

**CERTIFICATE OF SERVICE** ............................................................**28**

**CERTIFICATE OF COMPLIANCE** ..................................................**29**

# TABLE OF AUTHORITIES

Cases

*Batson v. Kentucky*,
  476 U.S. 79 (1986) ........................................................................12, 13

*City of Denton v. Grim*,
  2022 WL 3714517 (Tex. App. Aug. 29, 2022) ...................................27

*City of Fort Worth v. Zimlich*,
  29 S.W.3d 62 (Tex. 2000) ...................................................................26

*Edmonson v. Leesville Concrete Co.*,
  500 U.S. 614 (1991) ............................................................................12

*Flowers v. Mississippi*,
  588 U.S. ____, 139 S.Ct. 2228 (2019) .........................................Passim

*Foster v. Chatman*,
  578 U.S. 488 (2016) ......................................................................12, 20

*Hernandez v. New York*,
  500 U.S. 352 (1991) ......................................................................12, 14

*Hernandez v. State of Tex.*,
  347 U.S. 475 (1954) ............................................................................14

*Johnson v. Sawyer*,
  120 F.3d 1307 (5th Cir. 1997) ............................................................21

*Miller-El v. Dretke*,
  545 U.S. 231 (2005) ............................................................................20

*Moore v. Keller Indus., Inc.*,
  948 F.2d 199 (5th Cir. 1991) ..............................................................13

*Powers v. Ohio*,
  499 U.S. 400 (1991) ..................................................................12, 14, 20

*Puga v. RCX Sols., Inc.*,
  922 F.3d 285 (5th Cir. 2019) .........................................................20, 21

*Snyder v. Louisiana*,
   552 U.S. 472 (2008) ....................................................................14, 20

*Staub v. Proctor Hosp.*,
   562 U.S. 411 (2011) .......................................................21, 22, 23, 24

*Texas Tech Univ. Health Scis. Ctr. - El Paso v. Niehay*,
   641 S.W.3d 761 (Tex. App. 2022), *rev'd on other grds.*, 671 S.W.3d 929
   (Tex. 2023) ..........................................................................................26

*United States v. Clemons*,
   941 F.2d 321 (5th Cir. 1991) ..............................................................13

*United States v. Munoz*,
   15 F.3d 395 (5th Cir. 1994) ................................................................12

*United States v. Thompson*,
   735 F.3d 291 (5th Cir. 2013) ........................................................13, 14

*Wojcik v. Costco Wholesale Corp.*,
   2015 WL 1511093 (N.D. Tex. Apr. 2, 2015) ......................................27

*Zamora v. City Of Houston*,
   798 F.3d 326 (5th Cir. 2015) ..............................................................26

Statutes

28 U.S.C. § 1291 ........................................................................................2

29 U.S.C. § 623(a)......................................................................................1

38 U.S.C. § 4311(c)..................................................................................22

42 U.S.C. § 2000e ......................................................................................1

42 U.S.C. § 2000e-2(a), (m)......................................................................22

Tex. Labor Code § 21.001..........................................................................1

## CASE NO. 23-50305

## UNITED STATES COURT OF APPEALS

## FIFTH CIRCUIT

---

### CAMILO RAMIREZ

**Plaintiff – Appellant**

**v.**

### PLAINS ALL AMERICAN GP, L.L.C.,

**Defendant – Appellee**

---

**On Appeal from the United States District Court for the
Western District of Texas, Pecos Division**

---

### STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this employment
discrimination case brought under Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e, (Title VII), the Age Discrimination in Employment Act (ADEA),
29 U.S.C. § 623(a), and the Texas Commission of Human Rights Act (TCHRA),
Tex. Labor Code § 21.001. Plaintiff-Appellant Camilo Ramirez filed suit against
Defendant-Appellee Plains All American GP, L.L.C. alleging that he had been
discriminated against on the basis of his age and national origin (Hispanic).
ROA.11. The district court granted summary judgment with respect to the claim for
national origin discrimination and denied summary judgment with respect to the

claims for age discrimination.  ROA.565**.**  The case proceeded to trial on Ramirez's claim for age discrimination.  The jury did not find in Ramirez's favor.  The district court entered Final Judgment on March 27, 2023. ROA.754**.**  Plaintiff-Appellant Camilo Ramirez timely filed his Notice of Appeal on April 24, 2023. ROA.764**.**  This Court has jurisdiction over the appeal of final decisions of the district courts pursuant to 28 U.S.C. § 1291.  This appeal is from a final order that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

### ISSUE ONE

Plains exercised all three of its peremptory challenges against Hispanic jurors.  One of the prospective jurors knew another juror and said that he might reevaluate his own position if she had a different opinion, but he could still be fair.  According to Plains, that made him "wishy washy", so they struck him.  But the other juror was excused so there was no danger that he could be influenced by her.  The reason given by Plains was a pretext for discrimination.

Plains struck the other prospective Hispanic juror because she "did not have a job."  The prospective juror left the field blank on her juror questionnaire, and Plains' counsel did not ask her any questions even though he had nine minutes left on his voir dire when he began asking individual questions.  The reason given by Plains was a pretext for discrimination.

Did the district court err in denying Ramirez's Batson challenge?

## ISSUE TWO

Plains argued in closing that in order to show discrimination, Ramirez had to show that the supervisor four levels above him who rubberstamped his termination intended to discriminate against him.

There was evidence that the managers who made the decision to terminate Ramirez fired the only other employee in the district who was older than Ramirez, made age-related comments, replaced him with someone more than 20 years younger, and treated younger employees more favorably.

Did the district court err in denying Ramirez's request for a "cat's paw" instruction because it would have affected the outcome if the jury had been properly instructed?

## STATEMENT OF THE CASE

### I.    Ramirez works for Plains for almost 25 years.

Ramirez went to work for Plains in approximately 1996 as a truck driver. ROA.1170. He lived in Wink, Texas, and worked out of the yard in Kermit, Texas. ROA.1171. Ramirez and his wife Rosie have been married for 48 years and have two children and multiple grandchildren. ROA.1167-68. Other than a brief stint when he went to work for a competitor in 2006, he worked for Plains for almost 25 years. ROA.1172.

Ramirez worked in Plains' Pecos District, which covered a 60-to-80-mile radius around Pecos, Texas. ROA.967. The Pecos District, along with the Hobbs, Big Lake, and Midland Districts, made up Plains' Southwest Trucking Division. ROA.967.

Ramirez has held a commercial driver license (CDL) for more than forty years. ROA.1168. During that 40-year period, he has only had one speeding ticket for driving five miles over the speed limit. ROA.1168-69. He has never received a DOT violation. ROA.1169.

Ramirez's employment was terminated on August 30, 2020, during the pandemic. ROA.1175-76. Ramirez was 64 years old at the time of his termination. ROA.1031-ROA.1032.

II.    **Plains fires the two oldest drivers in the Pecos District.**

From January 2015 to the end of 2022, only three drivers were terminated in the Pecos District: Ramirez, Gilberto Reyes, and Paul Bizach. ROA.976-ROA.977. Mr. Reyes was 74 years old when he was terminated. ROA.977. Mr. Reyes was the oldest Plains driver at the time he was terminated. ROA.977-78. Mr. Ramirez was the second oldest driver in the Pecos District. ROA.977 Paul Bizach was 51 years old at the time he was terminated. ROA.978. Bizach was terminated for making terroristic threats, a very different reason than Ramirez and Reyes. ROA.978-79.

III.    **The managers in the field make age-related comments, fire Ramirez, and replace him with a driver who is more than 20 years younger than him.**

The primary managers who made the decision to terminate Ramirez were Lee Oliver, Pierce Broach, and Jeff Harper. ROA.1045. Ramirez's job duties were assumed by a driver named Ruben Blancarte, who was 40 years old at the time. ROA.1041.

Mr. Danielson gave the ultimate approval. ROA.1045. The chain of command went from Gene Durham to Lee Oliver to Pierce Broach to David Danielson. ROA.1077.

Ramirez's immediate supervisor was Wayland Gene Durham, who was 45 years old at the time of Ramirez's termination. ROA.967, ROA.1032. Durham is nineteen years younger than Ramirez and 29 years younger than Reyes. ROA.979-ROA.980. Ramirez's immediate supervisor Durham admitted having conversations

with Ramirez about the possibility of retiring in exchange for a severance package. ROA.975.  Ramirez testified that Durham also asked him repeatedly about when he was planning to retire.  ROA.1203.

Pecos District Manager Lee Oliver was Durham's immediate supervisor. ROA.968.

Southwest Trucking Division Operations Director Pierce Broach[1] was Oliver's boss.  ROA.968.

District Manager Lee Oliver recommended Mr. Ramirez's termination in an email to Southwest Trucking Division Operations Director Pierce Broach. ROA.2343 (PX 1).  He copied the email to Assistant Director Jeff Harper and HR Manager Lorne Isham.  ROA.2343. Oliver listed four events going back more than two years.  ROA.1023.  The ECR form states, "Warnings are in Effect for 12 Months" and has a space to identify "Date/Level/Nature of Offense of Previous Warnings within past 12 months."  ROA.2344-ROA.2347.

There is an ECR and a KPI for each event.  Plains provides drivers with a quarterly KPI bonus that is related to their years of service.  ROA.987.  When a driver receives a warning or a KPI deduction, some of his bonus is taken away. ROA.988.  An employee corrective action record (ECR) is a warning.  ROA.988.

---

[1] The trial transcript inaccurately refers to Roach.  ROA.968.  The correct name is Broach.

When a driver gets a KPI, then they get an ECR about the same incident. ROA.988. The ECR forms states that warnings are in effect for 12 months, telling a driver that a warning will "fall off" and not count against him after 12 months. ROA.988.

Ramirez received a warning more than two years before his termination for improper gauging and testing. ROA.1023. Ramirez received a warning 17 months before his termination for losing two tires when the lug nuts came loose, and there were no lug nut indicators. ROA.1024-25, ROA.2345.

The most recent incident was Ramirez's failure to realize that his brakes were applied and driving over 4 miles on a caliche road. ROA.2343. He also drove five miles over the speed limit of 25 miles per hour. ROA.2343. According to Ramirez's supervisor Gene Durham, dragging his tires was the incident that led to Ramirez's termination. ROA.1045.

Approximately one month before Ramirez's termination, another driver, Joe Garcia, failed to release his brakes and drove for ten miles, causing smoke and flame and airbag deployment on a public road. ROA.1032-1035, ROA.1070; ROA.1095-1096, ROA.2454-2457 (PX14). Mr. Garcia was 51 years old at the time, thirteen years younger than Mr. Ramirez. ROA.1096. Mr. Garcia was not fired. ROA.1035.

Trucking Division Director Pierce Broach agreed with the recommendation and added his knowledge of an incident that took place 13 years before while Mr. Ramirez was working for a competitor (Oxy). ROA.1025-ROA.1026, ROA.2342.

Broach added Field Supervisor Durham to the email.  ROA.2342.

Broach wrote, "I have known Camilo for a very long time…He is a nice guy and friendly and I like him a lot but we are not running a greeting service here." ROA.1026-ROA.1027, ROA.2342.

Managing Director of U.S. Trucking David Danielson was Broach's boss. ROA.968.  David Danielson is Plains' Managing Director of U.S. Trucking. ROA.1077.  As such, he was Ramirez's fourth level supervisor.  ROA.1077.

## IV. Managing Director of U.S. Trucking David Danielson rubberstamps the decision.

In reviewing a termination decision, Mr. Danielson would only have access to warnings for the driver being terminated, not for other drivers for similar conduct. ROA.1087.  The field incident reports are coachings.  ROA.1088.  Danielson did not have access to the field incident reports and none of those played any role in his decision to approve Ramirez's termination.  ROA.1088.  None of the warnings were ever escalated to Danielson for review unless an employee was terminated. ROA.1092.

Danielson cannot recall ever meeting Ramirez personally.  ROA.1093.  All of the decisions he made about Ramirez's employment were based on the email that was forwarded to him.  ROA.1093.  He did not compare Ramirez's treatment with other drivers to make sure he was treated similarly.   ROA.1091.   He never interviewed Ramirez to get his side of the story.  ROA.1094.  He did not do his own

investigation.  ROA.1093-94.

The same is true for the oldest driver in the district:  Danielson relied on the documentation gathered by the managers below him, he did not compare his discipline to other drivers who were not terminated, he did not conduct his own investigation, and he did not interview Mr. Reyes.  ROA.1094.  If the field supervisors decided to give a driver a coaching rather than a warning, Danielson would not know because he would not review it.  ROA.1097.  Danielson cannot remember how long it took him to review the recommendation for Ramirez's termination.  ROA.1100.  He cannot remember whether he spoke to Broach about it, but he knows he did not speak to any of the other supervisors or to Isham, the HR Manager.  ROA.1101.

## V.    Younger drivers are not fired for the same or similar conduct.

If a driver was found more than 25 feet away from his truck during loading or unloading, Plains wrote him up for "poor attitude."   Eighteen drivers were written up for poor attitude, including Ramirez.  ROA.992-ROA.993; ROA.2722, (PX 66). Three of the drivers were written up twice, and one driver was only written up once even though he was caught twice in the same day.  ROA.993-95.

Another common violation is improper gauging and testing.  Plains expects its drivers to test the oil before they pick it up to make sure it is merchantable. ROA.997.  Nine drivers were written up for improper gauging and testing, including

one driver who was written up twice.  ROA.2724 (PX 67)  That driver was 41 years old.  ROA.1004, ROA.2724.  The only drivers written up by Field Supervisor Gene Durham were 64 years old (including Ramirez).  ROA.1004, ROA.2724.

Plains disciplined 13 drivers for "preventable incident resulting in damage," truck/trailer abuse, or exceeding the speed limit.  ROA.1008, ROA.2725 (PX 68).

Lee Oliver sent a similar email about another employee detailing his disciplinary history, including a two-page "On-Going Employee Performance Tracker" with 15 incidents listed.  ROA.2463 (PX18).   Rather than an ECR, Humphrey received several "coachings" or Field Operational Incident Reports. ROA.1036-ROA.1040, ROA.2467-ROA.2471, ROA.2474 (PX18).  Humphrey was 51 years old at the time, 13 years younger than Ramirez.  ROA.1040-ROA.1041.

The district court granted summary judgment of Ramirez's claim for national origin discrimination.  ROA.565.  The case proceeded to trial on the claim for age discrimination under the ADEA and the TCHRA.  The jury did not find in Ramirez's favor.  ROA.748.  Final judgment was entered on March 27, 2023. ROA.754.  This appeal was timely filed on April 24, 2023.  ROA.764.

## SUMMARY OF THE ARGUMENT

The district court committed two errors, each of which independently constitute reversible error.  The district court denied Mr. Ramirez's *Batson* challenge and denied his request for a cat's paw instruction.

The district court erred when it denied Ramirez's *Batson* challenge. Ramirez only has to show that one of the Hispanic jurors was struck because of race. Ramirez is Hispanic. Plains exercised all three of its peremptory strikes against Hispanic jurors. One of the Hispanic jurors knew another panelist. The reason given by Plains for striking the juror was that he was "wishy washy" because he said that if the other prospective juror came to a different conclusion, it would cause him to reevaluate his position, but ultimately, he would be fair. Plains mischaracterized the nature of the relationship between the two prospective jurors. Ultimately, it did not matter because the other juror was excused. The reason given by Plains for striking the juror was a pretext for discrimination.

Plains struck another Hispanic juror because she "didn't have a job." The juror's questionnaire was blank, so it is possible that she did have a job and chose not to disclose it, was a homemaker, was retired, or was unemployed. Plains chose not to ask her any questions. Plains struck the juror because of her race.

When it came time to charge the jury, the district court refused a "cat's paw" jury instruction. The cat's paw instruction was appropriate because there is evidence that lower-level managers harbored discriminatory animus against Ramirez, and they provided the information upon which the ultimate decisionmaker rubberstamped the termination decision. In light of the evidence of age

discrimination, the omission of the instruction likely affected the outcome. The Court should reverse and remand the case for a new trial.

## ARGUMENT

**I.     Ramirez was deprived of a fair trial when the district court denied his *Batson* challenge.**

In *Batson v. Kentucky,* the U.S. Supreme Court ruled that a prosecutor's use of preemptory strikes to exclude potential jurors on the basis of their race (African American) was a violation of the defendant's constitutional rights to equal protection under the law and the right to a fair trial. *Batson v. Kentucky*, 476 U.S. 79 (1986), *holding modified by Powers v. Ohio*, 499 U.S. 400 (1991). The Supreme Court extended Batson to civil cases in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991), and to ethnicity based peremptory challenges in *Hernandez v. New York*, 500 U.S. 352, 352 (1991). This Court recognized that peremptory challenges based on ethnicity are unconstitutional in *United States v. Munoz*, 15 F.3d 395, 399 (5th Cir. 1994) ("Striking a juror on the basis of race, including Hispanic ethnicity, clearly violates *Batson*.").

The U.S. Supreme Court continues to affirm the importance of *Batson* and its progeny. See, e.g., *Flowers v. Mississippi*, 588 U.S. ____, 139 S.Ct. 2228, 2243 (2019) ("In the decades since *Batson*, this Court's cases have vigorously enforced and reinforced the decision, and guarded against any backsliding."); *Foster v.*

*Chatman*, 578 U.S. 488, 499 (2016) ("The "Constitution forbids striking even a single prospective juror for a discriminatory purpose.").

A *Batson* challenge is a three-step process. The first step is for the challenging party to make prima facie showing that the opposing counsel exercised peremptory challenges on the basis of race (or other protected characteristic). *Moore v. Keller Indus., Inc.*, 948 F.2d 199, 201 (5th Cir. 1991) *citing Batson*, 476 U.S. at 96–97. For the second step, the burden shifts to the striking party to articulate a race-neutral reason explanation for the strike. *Moore*, 948 F.2d at 201 *citing Batson*, 476 U.S. at 97–98. A neutral explanation is one "'based upon something other than the race of the juror.'" *Moore*, 948 F.2d at 201 *quoting United States v. Clemons*, 941 F.2d 321, 432–25 (5th Cir. 1991). Then, the burden shifts back to the challenging party to show purposeful discrimination. *Moore*, 948 F.2d at 201 *citing Batson*, 476 U.S. at 98.

The district court's decision is "usually accorded great deference on appeal because of the inherent credibility assessment." *Moore*, 948 F.2d at 201. Despite the deferential standard, the district court erred in denying Ramirez's Batson challenge of two prospective jurors – Numbers 15 and 17. Because "the Constitution forbids striking even one single prospective juror for a discriminatory purpose," Ramirez only has to show that one of the strikes was improper. *United States v.*

*Thompson*, 735 F.3d 291, 296 (5th Cir. 2013), *as modified* (Nov. 18, 2013) citing

*Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).

**A.    Ramirez established a prima facie case of discriminatory strikes and/or the prima facie case was mooted when Plains gave race neutral reasons for its strikes.**

Ramirez is of Hispanic national origin. ROA.921. Plains exercised all three

of its strikes against potential jurors of Hispanic national origin.[2] ROA.921. Thirty-

nine prospective jurors were seated. Sixteen of 38 self-identified as Hispanic on

their questionnaires (42 percent). Twenty-two of 39 self-identified as White (57

percent). Ramirez has made a prima facie showing that Plains exercised its

peremptory challenges on the basis of race. Alternatively, once Plains offered race-

neutral reasons for its strikes, and the district court ruled on the ultimate question of

intentional discrimination, the prima facie case became moot. *Thompson*, 735 F.3d

at 296 citing *Hernandez*, 500 U.S. at 359.

**B. Plains' explanation that it struck Juror Number 15 because he was "wishy washy" is a pretext for discrimination because the other prospective juror who might influence him was excused.**

---

[2] Even though Ramirez challenges Plains' peremptory challenges of Hispanic jurors, a party of any race may raise a *Batson* challenge, and a party may raise a *Batson* challenge even if the party and the excluded juror are of different races. See *Flowers*, 139 S. Ct. at 2243 citing *Hernandez v. State of Tex.*, 347 U.S. 475, 477–478 (1954) and *Powers v. Ohio*, 499 U.S. 400, 406 (1991).

The second prospective juror struck by Plains was Juror Number 15, Brian Saucedo.[3]   Plains' counsel stated that he struck prospective Juror Number 15 because he was "wishy washy," specifically, the prospective juror stated that he knew one of the prospective jurors on the front row and might be influenced by her. ROA.922-ROA.923.

Plains' counsel mischaracterized prospective Juror Number 15's relationship with the other prospective juror, Juror Number 1.

> [H]e had a relationship with the young lady that was in front of him, and I believe that there was a – where he was dating someone who worked for an employer and anyway it came up that they were – he was asked whether or not that would affect his ability to be fair, and he was like, well, I don't – he made some comment that just, you know, kind of struck me wrong.  That he just though, he was like, well, I might get in trouble or something like that."

ROA.922-ROA.923.

---

[3] Ramirez concedes that Plains provided a race neutral reason for striking the first Hispanic juror.  Juror Number 7, Erica Chavez, worked in the U.S. Attorney's Office as an administrative assistant. ROA.921. The reason given by Plains is that jurors with legal jobs may think they know more about the law, and other jurors may see them as experts on the law.  ROA.922.

What Prospective Juror Number 15 had actually said was that he knew prospective Juror Number 1 because he worked with her sister for four years. ROA.825.

Mischaracterizing the record can be an indicator of discriminatory intent. *Flowers*, 139 S. Ct. at 2243. "When a [party] misstates the record in explaining a strike, that misstatement can be another clue showing discriminatory intent." *Id.* at 2250.

The district court asked prospective Juror Number 15, "And is there anything about that relationship that would prevent you from acting independently in reaching a verdict and not be unduly influenced based on the relationship?" ROA.825.

Prospective Juror Number 15 responded, "Maybe. If she came to a different conclusion than what I did, I'd probably reevaluate mine just to see (indiscernible)." ROA.825.

The district court asked, "Then I guess what you're telling me though, is you would judge the evidence independently." ROA.825.

The prospective juror responded, "Yes." ROA.825.

As Ramirez pointed out, and the district court acknowledged, Juror Number 1 was excused. ROA.923. Therefore, there was no danger that Juror Number 15 would be influenced by her.

In arguing the *Batson* challenge, Ramirez's counsel accurately described Juror Number 15's response as saying, if she came to a different conclusion than me, it would cause me to give it a second look.  ROA.923.  "And my memory is that he said, but I could still evaluate it on my own judgment, I could be fair."  ROA.923.

In response, Plains' counsel argued,

> And, Your Honor, I agree with what she just said.  And it wasn't – we're not striking this – or we're nor moving to strike him for cause, or we weren't concerned about, you know, his bias.  Quite frankly we were just concerned about how that answer –
>
> Frankly, I mean, for lack of a better term we found it wishy washy, and we really wanted someone who would do a better job on the jury.

ROA.923.  Counsel also offered that, "we were trying to get to 19 and 18 who we felt we like better."  ROA.924.  The reason counsel liked Numbers 19 and 18 better is because they had jobs.  ROA.925.  This rationale does not apply to Juror Number 15 because he had a job.  ROA.825.

Ramirez's counsel responded, "…his lack of reasoning is [pretextual][4] and that the real reason for the strike was an improper basis on race and we think it's not supported and would ask that the juror be reinstated."  ROA.924.

---

[4] The transcript reads, "protectoral (phonetic)." It should be pretextual.

The district court denied the *Batson* challenge on the basis that "by surnames alone," it appears two other Hispanic jurors were not struck.  ROA.924.

As Ramirez's counsel correctly pointed out, "…the fact that there are Hispanics that they didn't strike…[does not] excuse[] a strike that's based on race."  ROA.925.  Each side was allowed only three strikes.  There were more than three Hispanic prospective jurors; the defense did not have enough strikes to strike them all.  The district court erred in denying the *Batson* challenge with respect to Juror Number 15.  This Court should reverse and remand for a new trial.

### C. Plains' explanation that it struck Juror Number 17 because she "didn't have job" is a pretext for discrimination because her juror questionnaire was blank, and Plains' counsel did not ask her any questions.

The third Hispanic prospective juror struck by Plains was Juror Number 17, Mrs. Marisol Jasmine Kent.  ROA.123.  Plains' counsel stated that he struck her because she "doesn't have a job."  ROA.924-ROA.925.  And also, her husband is a lease operator, and one of the facts in the case was that Ramirez had a conflict with a lease operator.  ROA.925.

In response, Ramirez's counsel argued that there were many other people on the panel that either work with a lease operator, work in oilfield leases, or have worked or have spouses who have worked.  ROA.925.  For example, Plains' counsel questioned Juror Number 11 about her husband's job in the oilfield.  ROA.875.

Side-by-side comparison of Hispanic jurors who were struck and non-Hispanic jurors who were not struck can be evidence of discrimination. See *Flowers*, 139 S. Ct. at 2243. "Comparing prospective jurors who were struck and not struck can be an important step in determining whether a *Batson* violation occurred." *Flowers*, 139 S. Ct. at 2248. When "the proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack panelist who is permitted to serve, that is evidence tending to prove purposeful discrimination." *Flowers*, 139 S. Ct. at 2248–2249. A party "is not required to identify an identical white juror for the side-to-side comparison to be suggestive of discriminatory intent." *Flowers*, 139 S. Ct. at 2249.

The space for occupation on Mrs. Kent's juror questionnaire was blank. ROA.926. The fact that the field was blank does not necessarily mean that the prospective juror was unemployed. It is possible that she could have been employed and chose not to fill it out, she could be a homemaker, she could be retired, she could be unemployed.

More importantly, Ramirez's counsel pointed out that Plains' counsel did not ask Mrs. Kent any questions even though he had nine minutes left at the time he started asking individual questions. ROA.869; ROA.926. A party's "failure to engage in any meaningful voir dire examination on a subject the [party] alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext

for discrimination." *Flowers*, 139 S. Ct. at 2249 quoting *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005).

"Other than voting, serving on a jury is the most substantial opportunity that most citizens have to participate in the democratic process." *Flowers*, 139 S. Ct. at 2238 citing *Powers v. Ohio*, 499 U.S. 400 (1991).

The "Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Foster v. Chatman*, 578 U.S. 488, 499 (2016) quoting *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).  Accord *Flowers*, 139 S. Ct. at 2244 citing *Foster*, 578 U.S. at 499.

In determining whether Plains' peremptory challenges of Mr. Saucedo and Mrs. Kent were improper, this Court cannot look at each strike in isolation but must look at the strike "in the context of all of the facts and circumstances." *Flowers*, 139 U.S. at 2251.  The district court erred in denying Ramirez's Batson challenge.  This Court should reverse and remand for a new trial.

## II.     Ramirez was deprived of a fair trial when the district court erred in denying his request for a cat's paw instruction.

This Court follows a two-step standard of review for errors in jury instructions.  First, the challenging party must show that "the charge as a whole creates substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 291–92 (5th Cir. 2019) (cleaned up).  Second, "even if the court finds that the jury instructions

were erroneous, it will not reverse if it determines, 'based upon the entire record, that the challenged instruction could not have affected the outcome of the case.'" *Id.* at 292 quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997).

Ramirez raised the cat's paw theory at the summary judgment stage. ROA.246.  Ramirez requested a cat's paw instruction in his proposed jury instructions.  ROA.668-ROA.669.  This Court has a pattern jury instruction for the cat's paw doctrine.  United States Court of Appeals Fifth Judicial Circuit, Pattern Jury Instructions (Civil Cases) 2020 (June 2020 Revision) § 11.7.

The district court overruled Ramirez's request for a cat's paw instruction. ROA.1402.  Ramirez submitted a request in substantially correct form based on the pattern instruction before the case went to the jury.  ROA.725.

The district court erred in denying Ramirez's request for a cat's paw instruction.

The Supreme Court recognized the cat's paw theory in *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011).  The employee, a U.S. Army Reservist, claimed that he was terminated in violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), which prohibits discrimination against members of the military.  562 U.S. at 413, 416–17.  The jury found in the employee's favor.  *Id.* at 413.  Although there was evidence that the employee's immediate supervisor and second-level supervisor were hostile toward his military obligations,

the employer argued, and the Seventh Circuit agreed, that the employer was entitled to judgment as a matter of law because there was evidence that the ultimate decisionmaker was not wholly dependent on the advice of the two lower-level supervisors. *Id.* at 416.

The Supreme Court reversed the Seventh Circuit, holding that "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Id.* at 422. Like Title VII, the causation standard under USERRA is motivating factor. *Id.* at 416–17 citing 38 U.S.C. § 4311(c) (USERRA) and 42 U.S.C. § 2000e-2(a), (m) (Title VII). Justice Scalia and the majority relied on general principles of tort and agency law:

> Since a supervisor is an agent of the employer, when he causes an adverse employment action the employer causes it; and when discrimination is a motivating factor in his doing so, it is a "motivating faction in the employer's action…"

*Id.* at 421. As Justice Scalia observed,

> An employer's authority to reward, punish, or dismiss is often allocated among multiple agents. The one who makes the ultimate decision does so on the basis of performance assessments by other supervisors. [The

employer's] view would have the improbable consequence that if an

employer isolates a personnel official from an employee's supervisors,

vests the decision to take adverse employment action in that official,

and asks that official to review the employee's personnel file before

taking the adverse action, then the employer will be effectively shielded

from discriminatory acts and recommendations of supervisors that were

*designed and intended* to produce the adverse action.

*Id.* at 420. This is exactly what Plains did, and what Plains argued to the jury.

After thanking the jury for its service, counsel began closing argument by stating, "And this case is simple. The question is whether Plains discriminated against Plaintiff because of his age. More fundamentally, whether Mr. Danielson discriminated but for his age. Because Mr. Danielson is the only person that made that decision. That's it. That's the only way Plaintiff can win this case." ROA.1452. Counsel continued, "You heard testimony from Mr. Danielson that he considered the facts…You heard testimony that he never considered Plaintiff's age, and he didn't even know Plaintiff's age." ROA.1452. Later, "The only evidence that you've actually heard from the witness stand is that Mr. Danielson did not consider the Plaintiff's age." ROA.1453. Also, "Lee Oliver is the one that supposedly discriminated against Plaintiff…It's important to note that Lee Oliver did not make the termination decision. Again, David Danielson." ROA.1459.

Further, "Your heard Mr. Danielson talk about their policy. You have a copy of their EEOC policy. You heard him say that he did not even know Plaintiff's age at the time. That he looked at the objective facts that were presented to him in Plaintiff's Exhibit 1, the supposed Walmart email." ROA.1462.

Counsel concluded his argument, "Plaintiff has admitted that he has no evidence that Danielson discriminated against him. He's the one that made the decision. Plaintiff cannot meet the burden that Danielson was – Danielson's decision was based upon his age. Whether the but for cause or the motivating factor, he just simply hasn't met his burden to establish that age had anything to do with it. And for that reason, we ask you to find Plains not liable. I thank you for your time." ROA.1468.

Justice Alito (and Justice Thomas, joining) concurred in the judgment based in the statutory text. *Id.* at 423–24. According to Justice Alito, "Where the officer with the formal decisionmaking authority merely rubberstamps the recommendation of others, the employer…has actually delegated the decisionmaking responsibility to those whose recommendation is rubberstamped." *Id.* at 425.

The failure to charge the jury on the cat's paw theory could have affected the outcome of the case because there was strong circumstantial evidence of age discrimination including but not limited to the following:

1. Ramirez was 64 years old at the time of the termination and had worked

for Plains for approximately 25 years.   ROA.977

2.  Ramirez and Reyes were the two oldest drivers in the Pecos District, and they were both fired.  Reyes was 74 years old.  ROA.977; ROA.1094

3.  Ramirez was replaced by a 40-year-old.  ROA.1041

4.  Ramirez's immediate supervisor was almost 20 years younger than him. OA.979

5.  Ramirez's immediate supervisor frequently questioned him about retiring. ROA.1203

6.  Ramirez's immediate supervisor asked Ramirez if he would take a severance package, and Ramirez said yes, but Plains never offered the package.  ROA.975; ROA.1203-1204

7.  A younger driver locked his brakes, drove farther, longer, on a public road, causing smoke and fire compared to Ramirez's incident on a rough lease road.  ROA.1032-ROA.1035

8.  Other younger drivers were treated differently. For example, Carl Humphrey was given coachings instead of ECRs so that he did not have two warnings within a year.  ROA.1037-1038, ROA.1040

9.  The district manager said he was not "running a greeting service" which could be a reference to Wal-Mart greeters, who are stereotypically older and/or disabled.  ROA.956; ROA.1026

This Court has ruled that the cat's paw theory of causation is sufficient to meet "but for" causation in Title VII retaliation cases. *Zamora v. City Of Houston*, 798 F.3d 326, 332–333 (5th Cir. 2015).  This Court explained the cat's paw theory as follows:

> In every case involving a cat's paw theory of causation, the ultimate decisionmaker bases his decision on a non-retaliatory reason. Indeed, that is why cat's paw analysis is needed: The plaintiff cannot show that the decisionmaker harbored any retaliatory animus. But because the supervisors caused that decision through actions motivated by retaliatory animus—in effect manipulating the decisionmaker into taking what appears to the decisionmaker to be a non-retaliatory action—the employer is liable.

798 F.3d at 336.  Although *Zamora* was a Title VII retaliation case, the Court noted that the same rationale for the cat's paw analysis could be extended to other claims requiring but for causation, like the ADEA.  *Id.* at 333 n.4.

The district court also erred in not providing that cat's paw instruction under Texas law.  Referring to the cat's paw theory as a "conduit theory," the Texas Supreme Court assumed that the theory was viable but not supported by the evidence in *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 70 (Tex. 2000).  At least two Texas courts of appeals have accepted the cat's paw theory since *Zimlich*.  See *Texas Tech*

*Univ. Health Scis. Ctr. - El Paso v. Niehay*, 641 S.W.3d 761, 783–785 (Tex. App. 2022), *rev'd on other grds.,* 671 S.W.3d 929 (Tex. 2023), rev'd on other grds., 641 S.W.3d 929 (Tex. 2023) (noting motivating factor causation standard under TCHRA is less than but for); *City of Denton v. Grim*, No. 05-20-00945-CV, 2022 WL 3714517 (Tex. App. Aug. 29, 2022), *review granted* (Sept. 1, 2023), Sept. 1, 2023). TCHRA's motivating factor standard is a lesser burden than but for causation required by the ADEA. *Wojcik v. Costco Wholesale Corp.*, No. 3:13-CV-2314-D, 2015 WL 1511093, at *9–10 (N.D. Tex. Apr. 2, 2015) (granting summary judgment on ADEA claim and denying summary judgment on TCHRA claim).

If properly charged with a cat's paw instruction, a reasonable jury could have found that Ramirez was discriminated against because of his age. The district court erred in denying the cat's paw instruction under both state and federal law. This Court should reverse and remand for a new trial.

## CONCLUSION AND PRAYER

WHEREFORE, Plaintiff-Appellant Camilo Ramirez respectfully prays that the Court reverse the district court's judgment and remand for trial; and for such other and further relief, at law or in equity, to which Plaintiff-Appellant Camilo Ramirez may show himself justly and lawfully entitled.

Respectfully submitted,

By:  /s/ Holly B. Williams
     Holly B. Williams
     Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P. C.**
1209 W. Texas Ave.
Midland, TX 79701
432-682-7800; 432-682-1112 (fax)
holly@williamslawpc.com

Kyla Gail Cole
**NEILL LEGLER COLE, PLLC**
300 Oak Lawn Ave., Ste. 425
Dallas, TX  75219
214-748-7777; 214-748-7778 (fax)
kyla@nlcemployeelaw.com

**ATTORNEYS FOR PLAINTIFF-
APPELLANT CAMILO RAMIREZ**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 13, 2023, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit, using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system as follows:

Samuel J. Stennis
Tyler J. Eyrich
COTTON, BLEDSOE, TIGHE & DAWSON, P.C.
500 W. Illinois Ave., Sute. 300
Midland, TX 79701

     /s/ Holly B. Williams
     Holly B. Williams

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5816 words, as determined by the word-count function of Microsoft Word 365, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

/s/ Holly B. Williams
Holly B. Williams

## **CERTIFICATE OF ELECTRONIC COMPLIANCE**

I hereby certify that, in the foregoing brief using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by Fifth Circuit Rule 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with the most recent version of BitDefender and is free of viruses.

/s/ Holly B. Williams
Holly B. Williams