No. 23-50305

# In the
# United States Court of Appeals for the Fifth Circuit

---

CAMILO RAMIREZ,

*Plaintiff-Appellant*,

v.

PLAINS ALL AMERICAN GP, L.L.C.,

*Defendant-Appellee*.

---

On Appeal from the United States District Court for the
Western District of Texas, Pecos Division
Civil Action No. 4:21-cv-00070-DC-DF

---

## BRIEF OF APPELLEE
## PLAINS ALL AMERICAN GP, L.L.C.

---

Samuel J. Stennis
Tyler J. Eyrich
Cotton, Bledsoe, Tighe & Dawson, P.C.
500 W. Illinois, Ste. 300
Midland, Texas 79701
[Tel.] (432) 684-5782
[Fax] (432) 682-3672
sstennis@cbtd.com
teyrich@cbtd.com

COUNSEL FOR DEFENDANT-APPELLEE

i

No. 23-50305

# In the
# United States Court of Appeals for
# the Fifth Circuit

---

CAMILO RAMIREZ,

*Plaintiff-Appellant*,

v.

PLAINS ALL AMERICAN GP, L.L.C.,

*Defendant-Appellee*.

---

On Appeal from the United States District Court for the
Western District of Texas, Pecos Division
Civil Action No. 4:21-cv-00070-DC-DF

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Plaintiff/Appellant**

Camilo Ramirez

**Counsel for Plaintiff/Appellant**

Holy B. Williams
Williams Law Firm, P.C.
1209 W. Texas Ave.
Midland, Texas 79701
[Tel] (432) 682-7800

Kyla Gail Cole
Neill Legler Cole, PLLC
300 Oak Lawn Ave., Ste. 425
Dallas, Texas 75219
[Tel] (214) 748-7777

**Defendant/Appellee**

Plains All American GP LLC

**Counsel for Defendant/Appellee**

Samuel J. Stennis
Tyler J. Eyrich
Cotton, Bledsoe, Tighe & Dawson, P.C.
500 W. Illinois, Ste. 300
Midland, Texas 79701
[Tel.] (432) 684-5782
[Fax] (432) 682-3672

/s/Samuel J. Stennis
Samuel J. Stennis

MIDLAND\015562\000007\3392119.1

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Plains All American GP, LLC ("Plains" or "Appellee"), does not believe oral argument is necessary for the Court and requests the District Court's decision be affirmed without oral argument. The District Court properly denied Appellant Camilo Ramirez's ("Appellant" or "Ramirez") *Batson* challenge and properly instructed the jury prior to the jury returning with the just and right decision finding that Plains was not liable for unlawful age discrimination. Plains contends that the time and expense of oral argument is not warranted in this case given that Appellant's presented issues are not novel or unique but rather cover the application of well-established law. However, if the Court desires oral argument, Appellee respectfully requests an opportunity to present oral argument to the Court at its pleasure and convenience.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ....................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF CONTENTS .................................................................. v

TABLE OF AUTHORITIES .............................................................. vi

ISSUES PRESENTED .................................................................. 2

STATEMENT OF THE CASE ............................................................ 3

I.    Plains' Policies and Procedures ............................................ 3

II.   Appellant's Actions Resulting in Termination .............................. 6

III.  Trial ...................................................................... 8

SUMMARY OF THE ARGUMENT ........................................................ 9

STANDARD OF REVIEW ............................................................. 11

I.    *Batson* Challenge: ...................................................... 11

II.   Jury Instruction: ........................................................ 11

ARGUMENT ...................................................................... 12

I.    The trial court properly denied Appellant's *Batson* challenges and this Court should not disturb the lower court's ruling on appeal. ................................... 12

  A. Plains struck Juror 15 for the race neutral reason that it was not satisfied with his ability to calmly, clearly, and confidently express his opinions during voir dire. ........................................................................ 13

  B. Plains struck Juror 17 for the race neutral reasons expressed to the court, specifically that she did not have a job and her husband was employed as a lease operator. .............................................................. 17

II.   The trial court properly instructed the jury and this Court should not disturb its ruling on appeal. ......................................................... 21

CONCLUSION .................................................................... 27

CERTIFICATE OF SERVICE ........................................................ 28

CERTIFICATE OF COMPLIANCE ..................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Batson v. Kentucky*,
  476 U.S. 79 (1986) ............................................................ 12, 16, 17, 19
*Chamberlin v. Fisher*,
  885 F.3d 832 (5th Cir. 2018)..................................................................20
*Fisher v. Lufkin Indus.,*
  *Inc.*, 847 F.3d 752 (5th Cir. 2017)........................................................22
*Flowers v. Mississippi*,
  588 U.S. __, 139 S. Ct. 2228 (2019) ............................... 11, 12, 13, 16
*Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.*,
  45 F.3d 962 (5th Cir. 1995)...................................................................13
*Heckman v. Gonzalez-Cabellero*,
  65 F.4th 222 (5th Cir. 2023)..................................................................13
*Hernandez v. N.Y.*,
  500 U.S. 352 (1991) ..............................................................................13
*Kanida v. Gulf Coast Med. Pers. LP*,
  363 F.3d 568 (5th Cir. 2004).......................................................... 21, 22
*Miller-El v. Dretke*,
  545 U.S. 231 (2005) ....................................................................... 18, 20
*Moore v. Keller Indus., Inc.*,
  948 F.2d 199 (5th Cir. 1991).................................................................12
*Price v. Cain*,
  560 F.3d 284 (5th Cir. 2009).................................................................12
*Purkett v. Elem*,
  514 U.S. 765 (1995) ....................................................................... 13, 16, 19
*Roberson v. Alltel Information Services*,
  373 F.3d 647 (5th Cir. 2004).................................................................22
*Snyder v. Louisiana*,
  552 U.S. 472, 479, (2008) .............................................................. 11, 20
*Thaler v. Haynes*,
  559 U.S. 43 (2010) ................................................................................12
*U.S. v. Thomas*,
  847 F.3d 193 (5th Cir. 2017)..................................................... 12, 13, 16
*U.S. v. Wilkerson*,
  556 F. App'x 360 (5th Cir. 2014)............................................. 18, 19, 20

*United States v. Bentley–Smith*,
  2 F.3d 1368 (5th Cir.1993) ...................................................................18
*Wantou v. Wal-Mart Stores Texas, L.L.C.*,
  23 F.4th 422 (5th Cir. 2022) ........................................................ passim
*Woodward v. Epps*,
  580 F.3d 318 (5th Cir. 2009) ...............................................................18
*Young v. Bd. of Supervisors*,
  927 F.3d 898 (5th Cir. 2019) ...............................................................22

**Statutes**

FED. R. CIV. P. 51 ....................................................................................11

No. 23-50305
In the

# United States Court of Appeals for the Fifth Circuit

---

CAMILO RAMIREZ,

*Plaintiff-Appellant*,

v.

PLAINS ALL AMERICAN GP, L.L.C.,

*Defendant-Appellee*.

---

On Appeal from the United States District Court for the
Western District of Texas, Pecos Division
Civil Action No. 4:21-cv-00070-DC-DF

---

**BRIEF OF APPELLEE
PLAINS ALL AMERICAN GP, L.L.C.**

---

TO THE HONORABLE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT:

## <u>ISSUES PRESENTED</u>

1. The trial court properly denied Appellant's Batson challenge to Jurors 15 and 17 and Appellant has failed to meet the high bar to demonstrate that the trial court's approval of Plains' race neutral rationales for striking the jurors were clearly erroneous.

2. The trial court did not abuse its discretion when it declined to include Appellant's proposed jury instruction.

## <u>STATEMENT OF THE CASE</u>

Plains is a crude oil transporter, transporting crude oil through pipelines and via trucks. ROA.1104. Through its trucking department, Plains transports crude oil from lease sites to refineries and truck facilities. ROA.1104. Its trucking operation employs approximately 880 employees and covers the continental United States. Safety is "vitally important" "[f]or the wellbeing of the employees,[ ]for safety of the public[,] and for [Plains'] reputation." ROA.1104.

## I. Plains' Policies and Procedures

As part of its emphasis on safety, Plains provides safety equipment and safety training, implements policies and procedures, and conducts disciplinary actions and employee coaching. ROA.1106. Through its roads committee, Plains spends time working with a Permian development program to train new drivers and to improve safety on all roads for all the drivers. ROA.1108. Plains also volunteers to assist and works with local law enforcement regarding training on vehicle inspections. ROA.1108–09. Its safety department records and monitors safety data and statistics, and Plains uses technology to monitor and record speed, routes, and other factors. ROA.1107. This technology includes monitoring systems to monitor driving behaviors, which allows it to coach its drivers and eliminate risky behaviors. ROA.1107–08. As a result of its efforts, Plains has reduced its motor vehicle incident

MIDLAND\015562\000007\3392119.1

rate by 60 percent and its rollover rate by 90 percent. ROA.1108. Plains has also implemented a bonus program to incentivize the safety of its drivers. ROA.1108.

The evidence and testimony before the jury emphasized the importance Plains placed on safety for the role of its truck drivers. "Safety is the number one role for all of us. For the driver, it's making sure your truck's safe going down the road." ROA.1042. "Safety of our employees and the safety of the public is of primary concern." ROA.1124.

Plains sets forth its driver job requirements, including the requirement that the driver abide by Plains' employee and safety policies and procedures; it also provides its drivers with a field operations driver handbook, which includes provisions regarding equal opportunity, occupational safety and health, and operating procedures. ROA.1122, 1124–25, 1680. These operating procedures include loading and unloading crude, operation and care of equipment, pretrip inspection, inspection of wheels, and sampling and testing of crude oil. ROA.1125–29, 1680. For example, Plains' drivers are required to stay within 25 feet of their truck during loading operations so that they can react quickly if there is a spill or other incident. ROA.1125, 1687. Drivers are required to thoroughly inspect their trucks before leaving the yard to make sure the vehicle is in good operating condition and that there are no defects that would cause problems on the road, including breakdowns or accidents. ROA.1126–27, 1689–90. The inspection process includes ensuring that lug nuts are tight in order to avoid losing

a wheel while driving. ROA.1127. Plains' handbook also provides specific procedures for sampling and testing oil to ensure the accuracy of their measurements in order to avoid unmarketable loads. ROA.1128–29, 1701–10. Plains also provides its drivers with training on these tasks. ROA.1129, 1529–34.

The prevention of workplace discrimination is also important to Plains, and Plains has policies in place to prevent discrimination, including an equal opportunity policy. ROA.1143, 1514, 1685. As part of this policy, personnel decisions must be made without prejudice or discrimination and procedures are in place regarding employee questions or concerns regarding alleged violations of Plains' policy. ROA.1143–44, 1514–15. Plains' Code of Business Conduct Policy address discrimination: "We will not tolerate illegal discrimination or harassment of any kind." ROA.1145, 1540. The Code of Business Conduct Policy also sets forth Plains' expectation and procedure for reporting illegal and ethical behavior, which includes an anonymous hotline. ROA.1145–46, 1541.

In order to ensure consistency in its disciplinary process, Plains has a corrective action policy. ROA.1130–31, 1782. The corrective action policy sets forth a progressive corrective action process in which drivers (1) will receive a first warning; (2) a receive a second and final warning; and then (3) any subsequent violation within a one year period can lead to termination. ROA.1131–32, 1783–84.

## II. Appellant's Actions Resulting in Termination

Appellant was employed by Plains as a driver. Following a series of violations within a one year period, Plains terminated Appellant for his repeated actions. The decision to terminate Appellant was made by Plains' Managing Director of Trucking, David Danielson, following the recommendations by Lee Oliver and Pierce Broach. ROA.1132, 1077. In making his decision Mr. Danielson reviewed an email from Mr. Broach with supporting documentation for the recommendation. ROA.1133, 1794. The supporting documentation detailed the four incidents for which Appellant received corrective action reports. ROA.1133, 1188–95, 1785–92. These incidents were the sole reason for Appellants' termination. ROA.1135.

In July 2018, Appellant received a corrective action report for failing to properly work a load of oil. ROA.1892. This behavior was concerning for Plains because Appellant hauled a bad load of oil, which caused issues selling that oil. ROA.1136. For this violation, Appellant received a "Warning #1." ROA.1892.

In April 2019, Appellant received a corrective action report because of an accident caused by Appellant's failure to conduct a proper pre-trip inspection. ROA.1893. Appellant was driving west on Highway 302 when the wheels, tires, and brake drum came off the back axle of Appellant's trailer. ROA.1893. This incident was especially concerning to Plains because this incident could have cost someone their life if the wheels would have impacted another car on the road. ROA.1136. Because this

MIDLAND\015562\000007\3392119.1

incident was within one year of the prior violation, for this violation, Appellant received a "Warning #2 Final." ROA.1893.

In November 2019, Appellant received a corrective action report for failing to properly work and treat a load of oil. ROA.1895, 1136–37. This behavior is typically caused by drivers' failing to follow proper procedures. ROA.1137. It causes dissatisfaction and distrust with Plains' customers, and here it caused the customer to reject the load. ROA.1137, 1895. Because this incident was within one year of the prior violation, for this violation, Appellant received a "Warning #2 Final." ROA.1895. Note, because the July 2018 incident was more than a year before this incident, it did not trigger the termination process.

In August 2020, Appellant received yet another corrective action report. ROA.1894. This report was because of Appellant's failure to stay within 25 feet of his vehicle during the pumping process. ROA.1137, 1894. Here again, Appellant received a "Warning #2 Final" and the termination process was not triggered because the April 2019 incident occurred more than a year before. ROA.1894.

Two days after the August 2020 incident, Appellant committed his final violation before termination. On the date of the final incident, Appellant got into an argument with one of Plains' customers, then left the lease location without checking his vehicle to ensure its vent was closed. ROA.1061, 1138. As a result of this failure, Appellant then proceeded to drive four miles down the lease road with six of the wheels

MIDLAND\015562\000007\3392119.1

locked without noticing, damaging Plains' vehicle. This was all done while Appellant was speeding in violation of the posted speed limits. ROA.1059–62.

Mr. Danielson reviewed the documentation concerning each of these incidents and ultimately made the decision to terminate Appellant. ROA.1139. Appellant's age did not factor into his decision. ROA.1141. During his employment, Appellant did not raise any questions or concerns to Plains regarding discrimination or mistreatment because of his age. ROA.1144.

## III. Trial

The Honorable Magistrate David B. Fannin oversaw jury selection prior to trial. ROA.799–930. As is common operating practice, the Parties were provided juror questionnaires prior to voir dire and asked questions of the potential jurors. *Id.* After voir dire, the trial court struck three jurors for cause and excused five other jurors. ROA.916–18. Plains struck three jurors with peremptory challenges. ROA.921. Appellant challenged Plains' strikes, alleging that Plains wrongfully struck three Hispanic jurors and moved to reinstate the jurors. ROA.921–26. After Plains was afforded an opportunity to provide its race neutral reasons for dismissal, the trial court denied all three *Batson* challenges. *Id.* On Appeal, Appellant concedes that Plains provided a justified, race neutral reason for dismissing one prospective juror and does not raise that issue with this Court. (App. Brief at 15, n.3).

MIDLAND\015562\000007\3392119.1

The case was tried before the Honorable Judge David Counts. Following trial, the jury entered a verdict finding that Appellant did not prove that, but for his age, Plains would not have terminated Appellant and finding that Appellant's age was not a motivating factor in Plains' decision to terminate Appellant. ROA.748–52. The trial court entered its final judgment that Plains was entitled to final judgment on all claims presented and later awarded Plains its costs. ROA.754–55, 791–96.

## SUMMARY OF THE ARGUMENT

The judgement of the trial court should be affirmed. In this appeal, Appellant asks this Court to ignore the deferential standards of review in place for each of the issues raised. The record before this Court clearly demonstrates that the trial court correctly decided Appellant's *Batson* issue and jury instruction issue.

Faced with litigation regarding its decision to terminate an employee who repeatedly violated company safety policies and procedures, Plains sought to identify potential jurors that both had an understanding of the practical, real-life realities of a workplace environment and would also appreciate the responsibilities and duties Plains had to its employees and the general public to conduct its operations in a safe and prudent manner. To that end, Plains exercised its discretion and reasoned judgment to exclude jurors who, in opinion of Plains and its counsel, did not exhibit these traits in their respective background questionnaires and their demeanor and answers during voir dire. Accordingly, Plains properly exercised its right to utilize its peremptory

challenges to exclude jurors for race neutral reasons. For each of the complained juror strikes, Plains articulated legitimate and non-discriminatory reasons for the strikes. The trial court, who was able to assess and judge Plains' credibility, denied Appellant's *Batson* challenge and found that Plains provided adequate, race neutral reasons for each of its peremptory challenges. When reviewed, especially considering the high deference given to the trial court, it is clear that the trial court's decisions should not be disturbed.

Appellant's second issue—the jury instruction complaint—is equally without merit. Appellant failed to show the requested instruction (1) was a substantially correct statement of law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim. The trial court's instruction properly instructed the jury that, as a company, Plains acts through its natural persons and agents. The jury then had to decide whether Plains' actions violated the ADEA and corresponding state laws. Appellant argued throughout trial that multiple employees of Plains discriminated against Appellant based on age. The jury rightly rejected these arguments, and its decision should not be disturbed.

MIDLAND\015562\000007\3392119.1

## STANDARD OF REVIEW

### I. *Batson* Challenge:

The Supreme Court has described the appellate standard of review of the trial court's factual determinations in a *Batson* hearing as "highly deferential." *Snyder v. Louisiana*, 552 U.S. 472, 479, (2008). "On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Id.* at 477; *see also Flowers v. Mississippi*, 588 U.S. __, 139 S. Ct. 2228, 2224 (2019).

### II. Jury Instruction:

An appellate court's review of jury instructions is reviewed as an abuse of discretion. *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 431–32 (5th Cir. 2022) (citing FED. R. CIV. P. 51). Appellate courts afford trial courts "great latitude in the framing and structure of jury instructions." *Id.* at 432. Additionally, review does not ask if every correct instruction from the parties was given, but rather considers whether the instructions "correctly and adequately instruct[] the jury as to the law to be followed in deciding the issues." *Id.* When determining if it was permissible to leave out a "cat's paw" jury instruction, "[t]he party challenging the instruction must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id.*

MIDLAND\015562\000007\3392119.1

**ARGUMENT**

**I. The trial court properly denied Appellant's *Batson* challenges and this Court should not disturb the lower court's ruling on appeal.**

As this Court is well aware, the Supreme Court and this Court have long-prohibited exercising preemptory strikes on the basis of protected characteristics. *See Batson v. Kentucky*, 476 U.S. 79 (1986). Under *Batson*, claims of discrimination in voir dire are analyzed using the familiar three-step process. *Price v. Cain*, 560 F.3d 284, 286 (5th Cir. 2009) (citing *Batson*, 476 U.S. at 93-94, 97-98). The challenger must establish a prima facie case showing that, with all relevant facts considered, an inference of discriminatory purpose is proper. *Id.* The burden then shifts to the party who made the strike to offer a race neutral explanation. *Id.* The burden then shifts back to the challenging party to demonstrate purposeful discrimination. *Moore v. Keller Indus., Inc.*, 948 F.2d 199, 201 (5th Cir. 1991) (*citing Batson*, 476 U.S. at 98). In making this determination, the trial court must decide whether discrimination has been proven or if the race neutral explanation is credible. *U.S. v. Thomas*, 847 F.3d 193, 208 (5th Cir. 2017). *Batson* requires that the judge undertake a sensitive inquiry into evidence of intent. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). All possible explanatory factors in the particular case should be taken into account. *Id.* at 48.

A *Batson* challenge should be denied when the trial judge finds the offered race neutral explanation for striking the juror to be credible. *See Flowers v. Miss.*, 139 S. Ct. 2228, 2243–44 (2019). The proffered explanation does not need to be persuasive

MIDLAND\015562\000007\3392119.1

or even plausible; it simply must be neutral. *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995).

The best evidence is often the demeanor of the attorney exercising the strike, which is extremely difficult to observe through a written record. *Hernandez v. N.Y.*, 500 U.S. 352, 365 (1991). Therefore, the trial judge is in the best position to make credibility determinations, and great deference should be given accordingly. *Thomas*, 847 F.3d at 209. The denial of a *Batson* challenge should not be reversed unless it is clearly erroneous. *Flowers*, 139 S. Ct. at 2244 (stating that a trial judge's findings must be affirmed unless clearly erroneous because they are largely an evaluation of credibility); *see also Heckman v. Gonzalez-Cabellero*, 65 F.4th 222, 229 (5th Cir. 2023); *Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.*, 45 F.3d 962, 964 (5th Cir. 1995).

**A.     Plains struck Juror 15 for the race neutral reason that it was not satisfied with his ability to calmly, clearly, and confidently express his opinions during voir dire.**

As clearly articulated at trial, Plains struck Juror 15 for the legitimate and non-discriminatory reason that it did not appreciate his demeanor and the substance of his answers. Plains struck Juror 15 because his response to questioning was "wishy washy." *See* ROA.923. The Cambridge Academic Content Dictionary defines "wishy washy" as: "lacking in firm ideas, principles, or the ability to make a decision." https://dictionary.cambridge.org/us/dictionary/english/wishy-washy. Faced with the

prospective juror's indefinite and irresolute answers to questions, Plains articulated to the trial court that it "really wanted someone who would do a better job on the jury." ROA.923. The trial court accepted this race neutral basis for striking the juror and properly found that Plains' articulated rationale was not a pretext for unlawful discrimination. ROA.924.

To be clear, Juror 15's responses were "wishy washy." Although some of the questions and answers between the trial court and Juror 15 are not clearly transcribed as part of the written record, it is evident from the record that Juror 15's answers indicated he was lacking in firm ideas, principles, or the ability to make a decision. When asked by the trial court whether there is "anything about that relationship [with another potential juror's sister] that would prevent [Juror 15] from acting independently in reaching a verdict and not be[ing] unduly influenced based upon the relationship," Juror 15 responded "[m]aybe. If she came to a different conclusion than what I did, I'd probably reevaluate mine just to see (indiscernible)." ROA.825. Ultimately, Juror 15 said he would we able to judge the evidence independently, but his statement in response to the previous question was unmistakable—he felt he may be unduly influenced based on a relationship with a prospective juror's sister. It is certainly reasonable that, based on this response, Plains was concerned with the general resoluteness of Juror 15 and his ability to not be easily swayed no matter who ultimately was on the jury given his uncertainty due to such a tenuous relationship. Plains made a

MIDLAND\015562\000007\3392119.1

legitimate, justified decision in terminating Appellant, and it desired jurors, regardless of protected characteristics, that it believed would understand and appreciate Plains' firmness in its legitimate business decisions. Regardless of Appellant's opinion of whether Juror 15 would have been wishy washy if selected, Plains' reasoning was race neutral and valid.

Further, Appellant's contention that Plains' purported mischaracterization of the record is evidence of discriminatory pretext is completely without basis. (App. Brief at 16-17). There was no mischaracterization of the record. Appellant's Brief, itself, arguably misrepresents the record and, most importantly, omits the crucial point of counsel's interpretation of the potential juror's answer and demeanor. Rather than misstating the factual record to the trial court, Plains' counsel specifically started his argument by stating that he "may not be able to recall exactly what this individual said" and counsel concluded his statement by reiterating, "again, I can't remember his exact words." ROA.923. There can be no legitimate argument that Plains' counsel was attempting to mislead the trial court on a relevant issue with these multiple, repeated caveats. More fundamentally, the articulated, non-discriminatory reason from the strike was not the details of any potential relationship or the exact words: it was due to the panel member's noted weak response, both in substance and demeanor. Plains' justified and race neutral reason articulated to the trial court was due to Juror 15's expressed general lack of steadfastness and firmness in his convictions. Again, the

thrust of the inquiry is not whether Plains' explanation was persuasive or even plausible, simply it must be race neutral. *Purkett*, 514 U.S. 767-68. The trial court correctly denied the *Batson* challenge based upon its evaluation of Plains' race neutral reasons, and Appellant failed to meet his high burden to demonstrate that the trial court's ruling was clearly erroneous. *See Flowers*, 139 S. Ct. at 2244; *Thomas*, 847 F.3d at 209.

Additionally, Appellant misunderstands Plains' argument in relation to Jurors 18 and 19 compared to Juror 15. (App. Brief at 17). Given Plains' understanding of the working of the trial court's voir dire procedure, a potential juror with a higher juror number will not be seated unless lower numbered jurors were excused because the trial court sat the first/lowest numbered acceptable jurors to form the jury. Given the overall information of these jurors, including the employment information presented in their questionnaire and demeanor during voir dire, Plains desired to have Jurors 18 and 19 seated on the jury. ROA.924–25. Accordingly, given that both sides had a potential for three preemptory strikes, Plains wanted to maximize the possibility that they were seated on the jury. Plains never contended that Juror 15's employment history was the reason for his strike, rather it was the indecisive and wavering nature of his answers during voir dire. Appellant has wholly failed to meet his substantial burden to establish the trial court's ruling was clearly erroneous.

MIDLAND\015562\000007\3392119.1

**B.     Plains struck Juror 17 for the race neutral reasons expressed to the court, specifically that she did not have a job and her husband was employed as a lease operator.**

Plains decided to exercise a preemptory challenge on Juror 17 because she did not indicate she was employed and her spouse was a lease operator. ROA.924–25. Given that this case was based upon discrimination in employment, Plains understandably gave significant weight to whether or not the jurors had relevant work experience. It is reasonable that Plains believed an employed juror would have a better general understanding of employment and how poor work performance leads to termination. Additionally, there were particular issues within the case that an unemployed juror might feel more sympathetic about, such as any alleged difficulty in searching for a new job and potential generalized anger towards employers. Plains believed a juror with a better grasp of how employment and a job search works would be more likely to make a decision based on facts rather than sympathy. The concern regarding Juror 17's lack of employment alone is a proper, race neutral reason to strike a juror and the trial court properly denied Appellant's *Batson* challenge.

Appellant's Brief does not contend that striking a juror for the race neutral reason that they were unemployed would be improper, but instead complains that Plains failed to question the juror about the lack of employment information provided in her questionnaire. (App. Brief at 18-19). As the trial court recognized, counsel for both parties had access to information provided from the trial court—which included

Page 17

employment information. ROA.926. Despite acknowledging on the record that Juror 17's questionnaire was "blank" regarding the issue of her employment, Appellant speculates that Juror 17 may be unemployed, a homemaker, retired, or simply elected not to fill out the question. ROA.926; (App. Brief at 19). Appellant then unreasonably contends that failure to question the juror regarding her employment is evidence of unlawful racial discrimination. *Id.*

However, this Court has repeatedly noted that, while failure to question a juror on a topic may be some evidence that the reason for exercising the strike is pretext for discrimination, the absence of questions is not always indicative of pretext. *See, e.g.*, *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005); *U.S. v. Wilkerson*, 556 F. App'x 360, 363 (5th Cir. 2014); *Woodward v. Epps*, 580 F.3d 318, 340 (5th Cir. 2009). When the relevant employment questions were "on the juror questionnaire, however, it does not automatically follow that absence of the questions in *voir dire* is indicative of pretext." *Woodward*, 580 F.3d at 340. Tellingly, Appellant cites to no rule or precedent that requires Appellee to engage in cumulative questioning to have panel members provide the same exact information already provided by the panel members in response to the questionnaire. The court's ultimate inquiry "is not whether counsel's reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based." *See Wilkerson* 556 F. Appx. At 363, (quoting *United States v. Bentley–Smith*, 2 F.3d 1368, 1375 (5th Cir.1993)). Appellant fails to meet his

burden to establish the trial court's ruling that relying on information provided by a prospective juror constitutes impermissible racial discrimination—let alone that the trial court's ruling was clearly erroneous. This Court should affirm the trial court's ruling.

Additionally, Juror 17's spouse was a lease operator. Given the information learned in discovery, Plains understood that Plaintiff's interaction with lease operators may—and indeed did—come into evidence in the trial. ROA.925; *see* ROA.1138. Plains expressed this race neutral reason to the trial court and the trial court properly found this reason credible. ROA.925. Assuming, *arguendo*, that the testimony did not come in or that it would not have affected Juror 17, the *Batson* challenge was properly denied because the explanation does not need to be persuasive or even plausible; it simply must be race neutral. *Purkett*, 514 U.S. at 767–68.

Appellant alleges Juror 17 was similar to other panel members in that the members or their spouses worked in the oil field. In his Brief, Appellant directs this Court to Juror 11 and claims Plains questioned her about her husband's "job in the oilfield." (App. Brief at 18). This Court has recognized that the "Supreme Court has cautioned appellate courts about taking up these side-by-side comparisons for the first time on appeal." *Wilkerson*, 556 Fed. Appx. at 365. This caution should be heeded because a "retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial. In that situation, an

appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable." *Id.* (quoting *Snyder v. Louisiana*, 552 U.S. 472, 483 (2008)). This is important because disparate treatment is only shown when the proffered race neutral reason for striking a minority juror applies on point to a white juror who was not struck. *Miller-El*, 545 U.S. at 241. If the entire context in which a white juror was kept is not considered, then that juror is not a useful comparator. C*hamberlin v. Fisher*, 885 F.3d 832 (5th Cir. 2018).

Even assuming, *arguendo*, that Plaintiff had explored this issue with the trial court, Juror 11 is not a proper comparator with Juror 17. Juror 11's husband was a retired manager with an oil and gas company. ROA.875. Further, Juror 11 indicated that he was responsible for hiring, firing, and managing employees. ROA.875. In contrast, Juror 17's husband was a lease operator. ROA.925. Plains' understood that while lease operators are an invaluable part of oil and gas operations, lease operators' job duties typically handle day-to-day, hands-on operations as compared to managerial duties or decision making responsibilities. *See* ZipRecruiter Marketplace Research Team, *What Is an Oil Field Lease Operator and How to Become One*, ZIPRECRUITER, https://www.ziprecruiter.com/career/Oil-Field-Lease-Operator/What-Is-How-to-Become (last visited November 22, 2023). It is understandable that Plains would prefer jurors more sympathetic to the practical realities of managerial/supervisory roles. Regardless, the clear distinction between the roles

Page 20

demonstrate that Juror 11 is not a proper comparator with Juror 17. Accordingly, the trial court properly credited the race neutral reasons proffered by Plains.

Also, as discussed hereinabove, Plains preferred Jurors 18 and 19 for race neutral reasons. Accordingly, these race-neutral and valid reasons similarly weighed in favor of Plains' strike of Juror 17, because it desired to have the higher numbered panel members on the jury.

Appellant has wholly failed to demonstrate that Plains' strike of Juror 17 was a pretext for discrimination and further failed to show the honorable trial court's ruling was clearly erroneous. Given the deferential standard of review, this Court should affirm the trial court's ruling.

## II. The trial court properly instructed the jury and this Court should not disturb its ruling on appeal.

The trial court did not abuse its discretion by declining to include Appellant's proposed "cat's paw" instruction. As noted above, on appeal this Court affords "the trial court great latitude in the framing and structure of jury instructions." *Wantou*, 23 F.4th at 431–32. "[T]he district court's refusal to give a requested jury instruction constitutes reversible error only if the instruction (1) was a substantially correct statement of law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim." *Id.* at 435 (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004)). "The party

Page 21

challenging the instruction must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id.* at 432 (quoting *Young v. Bd. of Supervisors*, 927 F.3d 898, 904 (5th Cir. 2019)). The question before this Court is not whether a cat's paw instruction would have been permissible, but rather did the trial court abuse its discretion by not including Appellant's proposed instruction. For the reasons explained below, Appellant has failed to show the trial court abused its discretion.

Under a cat's paw theory, a plaintiff may argue that the official decisionmaker who took the final adverse employment action against the plaintiff was influenced by the discriminatory actions of other employees/co-workers. *See Roberson v. Alltel Information Services*, 373 F.3d 647, 655 (5th Cir. 2004). To be successful on this theory, the plaintiff must show the co-worker exhibited discriminatory-based hostility towards the plaintiff, and such co-worker "possessed leverage, or exerted influence, over the titular decisionmaker." *See id.*; *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017). In short, the plaintiff must show that the co-worker with an age-based charged motive ultimately caused the decisionmaker to take the action. *See Wantou*, 23 F.4th at 436.

This Court's opinion in *Wantou* is particularly instructive to the Court's analysis in this case on this issue. In *Wantou*, this Court held the district court's refusal to include the proposed cat's paw instructions was not an abuse of discretion. *See id.*

MIDLAND\015562\000007\3392119.1

Although Wantou alleged that several co-workers' racial discrimination comments were a but-for cause of his termination, the district court found no evidence that the racially charged actions influenced Wal-Mart's decisions about his employment, and therefore a cat's paw instruction was not warranted. *See id.* at 435.

More significantly, the Court concluded that the jury instructions were not clearly erroneous in an outcome-determinative way. *Id.* During the trial, Wantou freely presented to the jury his allegations that the retaliatory animus of co-workers influenced and resulted in various employment actions taken by Defendant Wal-Mart. *Id.* at 436. The jury charge used the phrase "the Defendant Wal-Mart" and did not list individual decisionmakers. *Id.* at 435. The Fifth Circuit explained that the general verbiage of "the defendant, Wal-Mart" could include any employee listed in Wantou's proposed instruction or arguments, and thus not including the cat's paw instruction specifically listing of individuals did not affect the case's outcome. *Id.* The court concluded Wantou's argument was in no way impaired by excluding the cat's paw instruction and any employee's racial discrimination could be imputed onto "the defendant Wal-Mart" using the trial court's jury instructions. *Id.*

The Court's reasoning in *Wantou* is equally applicable to Appellant's challenge to the jury charge here. In Appellant's proposed instruction (ROA.668), Appellant requested an instruction focused on the alleged acts of discrimination by Gene Durham, Lee Oliver, and Pierce Broach. Like in *Wantou,* the verdict form submitted by the trial

Page 23

court did not name individual employees of Plains, but rather properly asked "Has Plaintiff proved that, but for his age, Defendant would not have terminated him?" and "Was Plaintiff's age a motivating factor in Defendant's decision to terminate Plaintiff?" ROA.748, 749. Defendant is listed as Plains All American GP, LLC. ROA.736; *see* ROA.737. The jury instructions also included an "Agency" instruction, instructing that "[a] corporation may only act through natural persons as its agents or employees." ROA.740.

Nowhere in the charge or verdict form was the jury restricted to the actions of any one Plains employee. Like in *Wantou*, Appellant was allowed to freely argue to the jury during the trial "the roles and alleged motives of the various actors, and was not limited in attributing those actions and motivations to [Plains], who is the sole defendant." *Wantou*, 23 F.4th at 436. Like in *Wantou*, "Defendant" "could capture each co-worker or supervisor covered in [Appellant's] requested instruction." *Id.* Appellant "was able to argue about the . . . animus of his co-workers, and assert that animus resulted in . . . adverse employment actions." *Id.* "Indeed, [Appellant] was able to provide his full story in closing and present all of his arguments to the jury without objection." *Id.*; *see* ROA.1440–44, 1448 ("[W]e've presented evidence to you of the chain of command, Camilo Ramirez, Gene Durham, Lee Oliver, Pierce Broach, and Jeff Harper, who was training to take Pierce's position, Lorne Isham and David

Danielson. We're suing Plains, and Plains acted through the -- Plains acted through the conglomeration of those men through their actions.").

Moreover, Appellant presented no evidence that Gene Durham, Lee Oliver, or Pierce Broach's intentions were an age-based, discriminatorily motivated pretext that influenced the ultimate decision of his termination. Appellant agreed he took each action forming the underlying bases of the issued corrective action report and that the reports issued by Plains were valid. ROA.1213–23. It was these actions upon which Plains based its termination decision. ROA.1138–39. Appellant stated he did not believe Mr. Durham discriminated against him based on age. ROA.1226. Appellant stated he did not believe Mr. Broach discriminated against him based on age. ROA.1227. Appellant stated he had no information that would lead him to believe that Mr. Danielson made his decision to terminate based on age. ROA.1227. Appellant did say he believed Mr. Oliver discriminated against him, but the only factual basis he could point to is that Mr. Oliver did not shake his hand after Mr. Oliver returned to work after being gone for two weeks to take care of his sick wife. ROA.1244.

At the charge conference, Appellant failed to identify any specific sufficient evidence of discriminatory animus in support of the causation element of the cat's paw instruction. Appellant claimed that "they" (Plains)—not any one individual—allegedly disregarded a policy of looking back over twelve months. ROA.1388. In addition to failing to point to any one individual, this statement is unsupported by evidence. While

Page 25

Mr. Danielson did state the corrective action policy provided that a final warning meant that the next incident within a year would result in termination (ROA.1132), there is no evidence of a policy that prevented Plains from considering actions outside of one year when making the decisions to terminate. *See* ROA.1782–84. But more importantly, Appellant did not contend any one individual "disregarded" the policy. The only other alleged evidence Appellant pointed to during the conference was the "greeting services comment" in the email written by Pierce Broach. ROA.273. "He is a nice guy and friendly, and I like him a lot, but we're not running a greeting service here." ROA.1794. Throughout trial, Appellant made the strained argument that somehow this comment was aged based. *See, e.g.*, ROA.954, 956, 1439, 1451. Mr. Broach's comment was not evidence of discriminatory animus. Mr. Durham did not understand it to have anything to do with age. ROA.1065. Mr. Danielson did not understand it to have anything to do with age. ROA.1140–41. The trial court in its discretion did not believe so and neither did the jury. Again, the requested instruction sought to include Gene Durham, Lee Oliver, Pierce Broach—not just Pierce Broach— so even if Mr. Broach's comment was sufficient evidence, the inclusion of Gene Durham and Lee Oliver in the proposed instruction was not "a substantially correct statement of law." *See Wantou*, 23 F.4th at 435.

Here again, the charge and verdict referred to "Defendant," which, as established in the *Wantou* case and in the instructions, included any employee listed in Appellant's

Page 26

proposed cat's paw instruction. Because the defendant listed in the jury charge included any individual listed in Appellant's proposed jury charge, using one instead of the other would not result in a substantially different outcome. Given the lack of evidence, Appellant's ability to present his arguments to the jury, and the encompassing term "Defendant", this Court should hold there was no error in the jury charge that would have affected the outcome of the case and the trial court did not abuse its discretion when it did not include Appellant's proposed cat's paw instruction.

## <u>CONCLUSION</u>

The Court should affirm the district court's judgment.

Respectfully submitted,

/s/ Samuel J. Stennis
Samuel J. Stennis
Texas State Bar No. 24079395
Tyler J. Eyrich
Texas State Bar No. 24101741
Cotton, Bledsoe, Tighe & Dawson, P.C.
500 W. Illinois, Ste. 300
Midland, Texas 79701
[Tel.] (432) 684-5782
[Fax] (432) 682-3672
sstennis@cbtd.com
teyrich@cbtd.com

COUNSEL FOR DEFENDANT-APPELLEE

MIDLAND\015562\000007\3392119.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 22, 2023, the foregoing document was served, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon the following registered CM/ECF users:

Holy B. Williams                        Kyla Gail Cole
Williams Law Firm, P.C.                 Neill Legler Cole, PLLC
1209 W. Texas Ave.                      300 Oak Lawn Ave., Ste. 425
Midland, Texas 79701                    Dallas, Texas 75219

Counsel also certifies that on November 22, 2023, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

Counsel further certifies that 1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; 2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and 3) the document has been scanned with Webroot version 9 and is free of viruses.

/s/ Samuel J. Stennis
Samuel J. Stennis

# CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 5,995 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in Times New Roman font 14-point type face.

/s/ Samuel J. Stennis
Samuel J. Stennis

COUNSEL FOR DEFENDANT-APPELLEE

Dated: November 22, 2023