CASE NO. 23-50305

UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

---

CAMILO RAMIREZ

Plaintiff - Appellant
v.

PLAINS ALL AMERICAN GP, L.L.C

Defendant - Appellee

---

On Appeal from the United States District Court for the
Western District of Texas, Pecos Division

---

REPLY BRIEF FOR PLAINTIFF-APPELLANT
CAMILO RAMIREZ

---

Holly B. Williams
WILLIAMS LAW FIRM, P.C.
1209 W. Texas Ave.
Midland, TX  79701
432-682-7800; 432-682-1112 (fax)
holly@williamslawpc.com

Kyla Gail Cole
NEILL LEGLER COLE, PLLC
300 Oak Lawn Ave., Ste. 425
Dallas, TX  75219
214-748-7777; 214-748-7778 (fax)
kyla@nlcemployeelaw.com

ATTORNEYS FOR
PLAINTIFF-APPELLANT
CAMILO RAMIREZ

## TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................ii

TABLE OF AUTHORITIES....................................................................iv

SUMMARY OF THE ARGUMENT IN REPLY ...................................1

ARGUMENT IN REPLY ........................................................................3

I.     THE TRIAL COURT'S RULINGS ON RAMIREZ'S *BATSON* CHALLENGES WERE CLEARLY ERRONEOUS. ..........................3

      A.   Ramirez has shown that the reason given by Plains to strike Juror Number 15 was a pretext because the other prospective juror known to him was excused and could not have influenced him. ............................................................7

      B.   Ramirez has shown that the reason given by Plains to strike Juror Number 17 was a pretext because the fact that she left her juror questionnaire blank does not mean that she did not have a job. ....................................................................9

II.    THE TRIAL COURT'S DENIAL OF RAMIREZ'S REQUEST FOR A CAT'S PAW INSTRUCTION SERIOUSLY IMPAIRED RAMIREZ'S ABILITY TO PRESENT HIS CASE AND PROBABLY AFFECTED THE OUTCOME OF THE CASE. ..............13

      A.   There was sufficient evidence to support a cat's paw instruction. ...................................................................14

      B.   Ramirez requested a cat's paw instruction in substantially correct form. ...................................................................15

      C.   The absence of the cat's paw instruction probably affected the outcome of the case. .........................................16

CONCLUSION AND PRAYER...........................................................18

CERTIFICATE OF SERVICE .............................................................19

**CERTIFICATE OF COMPLIANCE** ...................................................**20**

**CERTIFICATE OF ELECTRONIC COMPLIANCE** ......................................**20**

# TABLE OF AUTHORITIES

## CASES

*Batson v. Kentucky,*
  476 U.S. 79 (1986) ..............................................................*passim*

*Flowers v. Mississippi,*
  139 S. Ct. 2228 (2019) ................................................3, 9, 12

*Foster v. Chatman,*
  578 U.S. 488 (2016) ...............................................................3

*Johnson v. Sawyer,*
  120 F.3d 1307 (5th Cir. 1997) ............................................14

*Miller-El v. Cockrell,*
  537 U.S. 322 (2003) .............................................................13

*Miller-El v. Dretke,*
  545 U.S. 231 (2005) ......................................................*passim*

*Moore v. Keller Indus., Inc.,*
  948 F.2d 199 (5th Cir. 1991) .................................................4

*Powers v. Ohio,*
  499 U.S. 400 (1991) ...............................................................4

*Puga v. RCX Sols., Inc.,*
  922 F.3d 285 (5th Cir. 2019) ...............................................13

*Purkett v. Elem,*
  514 U.S. 765 (1995) .......................................................3-4, 12

*Snyder v. Louisiana,*
  552 U.S. 472 (2008) ....................................................3, 5, 11-12

*Staub v. Proctor Hosp.,*
  562 U.S. 411, 425 (2011) ....................................................17

*Stevens v. Epps*,
   618 F.3d 489 (5th Cir. 2010) ...................................................................5

*Swain v. Alabama*,
   380 U.S. 202 (1965), *overruled by Batson v. Kentucky*,
   476 U.S. 79 (1986) ...............................................................................12

*United States v. Wilkerson*,
   556 F. App'x 360 (5th Cir. 2014) ....................................................9, 13

*United States v. Williamson*,
   533 F.3d 269 (5th Cir. 2008) ...............................................................13

*Wantou v. Wal-Mart Stores Texas, L.L.C.*,
   23 F.4th 422 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 745 (2023),
   *reh'g denied,* 143 S. Ct. 1049 (2023) ..........................................2, 13-14

*Woodward v. Epps*,
   580 F.3d 318 (5th Cir. 2009) ...........................................................9-10

*Zamora v. City of Houston*,
   798 F.3d 326 (5th Cir. 2015) ...............................................................18

## OTHER

United States Court of Appeals Fifth Judicial Circuit, Pattern Jury Instructions
   (Civil Cases) 2020 (June 2020 Revision) § 11.7............................15-16

CASE NO. 23-50305

## UNITED STATES COURT OF APPEALS

## FIFTH CIRCUIT

CAMILO RAMIREZ

Plaintiff – Appellant

v.

PLAINS ALL AMERICAN GP, L.L.C.,

Defendant – Appellee

On Appeal from the United States District Court for the
Western District of Texas, Pecos Division

## SUMMARY OF THE ARGUMENT IN REPLY

The district court committed two independent errors, either of which may have caused an improper result and requires reversal. The district court committed reversible error when it denied Plaintiff-Appellant Camilo Ramirez's *Batson* challenge. The district court committed reversible error when it denied Ramirez's request for a cat's paw instruction.

## *BATSON* CHALLENGES

First, the district court committed reversible error when it denied Plaintiff-Appellant Camilo Ramirez's *Batson* challenge with respect to two prospective jurors. Ramirez is Hispanic. All three of Plains' peremptory strikes were against

1

Hispanic prospective jurors. Plains offers the race neutral reason that Juror 15 was "wishy washy" because he said that if a certain prospective juror came to a different conclusion, it would cause him to reevaluate his position, but ultimately, he would be fair. Ramirez has shown that this reason is a pretext because the other juror was excused. Therefore, there was no danger that Juror No. 15 would be improperly influenced, and the reason given by Plains is a pretext for discrimination. This Court should reverse and remand for a new trial.

Plains struck another Hispanic juror because she "didn't have a job." The juror's questionnaire was blank, so it is possible that she did have a job and chose not to disclose it, was a homemaker, was retired, or was unemployed. Plains chose not to ask her any questions. The reason given by Plains is a pretext for discrimination. This Court should reverse and remand for a new trial.

## JURY CHARGE ERROR

Second, the district court committed reversible error when it denied Plaintiff-Appellant Camilo Ramirez's request for a cat's paw instruction because the requested instruction (1) was a substantially correct statement of law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim." *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 435 (5th Cir. 2022), *cert. denied,* 143 S. Ct. 745 (2023), *reh'g*

2

*denied*, 143 S. Ct. 1049 (2023). There was evidence that lower-level managers harbored discriminatory animus against Ramirez, and they provided the information upon which the ultimate decisionmaker rubberstamped the termination decision. The ultimate decisionmaker was four levels above Ramirez. Without the cat's paw instruction, the jury was left with the mistaken impression that Ramirez had to prove that the ultimate decisionmaker – who had never even met him – intentionally discriminated against him on the basis of age. The omission of the instruction likely affected the outcome. The Court should reverse and remand the case for a new trial.

**ARGUMENT IN REPLY**

## I.     THE TRIAL COURT'S RULINGS ON RAMIREZ'S *BATSON* CHALLENGES WERE CLEARLY ERRONEOUS.

The "Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Foster v. Chatman*, 578 U.S. 488, 499 (2016) *quoting Snyder v. Louisiana*, 552 U.S. 472, 478 (2008). *Accord Flowers v. Mississippi*, 139 S. Ct. 2228, 2244 (2019) citing *Foster*, 578 U.S. at 499.

This Court should consider all relevant facts and circumstances in determining whether Plains' peremptory challenges were motivated in substantial part by purposeful discrimination. *See Flowers*, 139 S. Ct. at 2251; *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Plains cites *Purkett v. Elem*, 514 U.S. 765 (1995) three times for the proposition that its explanation does not have to be "persuasive or even plausible"

so long as it is race neutral.  Appellee's Brief at p. 13, 16, and 19 citing *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995).  That is true for the second step of the *Batson* analysis.

A *Batson* challenge is a three-step process.  The first step is for the challenging party to make prima facie showing that the opposing counsel exercised peremptory challenges on the basis of race (or other protected characteristic).  *Moore v. Keller Indus., Inc.*, 948 F.2d 199, 201 (5th Cir. 1991) *citing Batson v. Kentucky*, 476 U.S. 79, 96–97 (1986), *holding modified by Powers v. Ohio*, 499 U.S. 400 (1991).  For the second step, the burden shifts to the striking party to articulate a race-neutral reason explanation for the strike.  *Moore*, 948 F.2d at 201 *citing Batson*, 476 U.S. at 97–98.  Then, the burden shifts back to the challenging party to show purposeful discrimination.  *Moore*, 948 F.2d at 201 *citing Batson*, 476 U.S. at 98.

*Purkett* recognizes that the persuasiveness of the justification becomes relevant at the third step in which the opponent bears the burden of proving purposeful discrimination.  514 U.S. at 768.  "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination."  *Id.*  The third step requires judges "to engage in the awkward, sometime hopeless, task of second-guessing a [party's] instinctive judgment – the underlying basis for which may be invisible even to the [party] exercising the challenge."  *Miller-El*, 545 U.S. at 267–68 (J. Breyer, concurring)*.

4

The conclusion that either strike was discriminatory is sufficient for reversal. In addition to the detailed analysis below for Jurors Number 15 and 17, the Court may consider the fact that Plains used all three of its strikes against Hispanic jurors, and of the two strikes for cause made by Plains, one was against a Hispanic juror. Plains used five of its six strikes against Hispanic jurors.

Even though Ramirez is not seeking reversal based on the district court's erroneous grant of Plains' strike for cause against a fourth Hispanic prospective juror, it cannot be ignored that Plains made only two strikes for cause, and one was against another Hispanic. "[B]ecause 'all of the circumstances that bear upon the issue of racial animosity must be consulted,' the court may consider the strike of one juror for any relevance it might have regarding the strike of another juror." *Stevens v. Epps*, 618 F.3d 489, 497 (5th Cir. 2010) (quoting *Snyder*, 552 U.S. at 478).

Although this Court used discretionary language ("may consider") in *Stevens*, the Supreme Court has held that it is mandatory to consider the strike of one juror for the relevance it may have regarding the strike of another juror. *Snyder*, 552 U.S. at 478 ("[A]s just one example, if there were persisting doubts as to the outcome, a court *would be required to consider* the strike of Ms. Scott for the bearing it might have upon the strike of Mr. Brooks." (emphasis added)).

Plains moved to strike Juror No. 10, Mr. Gonzalez for cause, and the district court granted the strike. ROA.916-917. Mr. Gonzalez knew some of the potential

witnesses but said he could put that aside and follow the Judge's instructions. ROA.890. He also answered that he could be a fair and impartial juror. ROA.890. Yet, the district court granted Plains' motion to strike for cause.

The district court denied Ramirez's motion to strike Juror No. 4 for cause. ROA.915-ROA.916. Juror No. 4 was a supervisor who stated twice that if he were the plaintiff, he would not want himself on the jury and also expressed hesitation to award mental anguish damages for a termination. ROA.879-ROA.881. The district court rehabilitated Juror No. 4. ROA.882.[1] Consequently, Ramirez was required to use one of his peremptory strikes against Juror No. 4,

Ramirez argued, "Your Honor, I wrote down he said he could be fair and if you're going to deny Number 4, you should deny Number 10." ROA.917. The district court stated, "I'm going to grant Number 10. My recollection is that he said that he could lay that aside and be fair and impartial and listen to the evidence before the Court." ROA.917. This statement caused confusion, and Ramirez requested

---

[1] THE COURT: And Mr. Nunez, everyone comes to court with a full life's experience behind them. And no one is here trying to take that away from you or tell you you can't have your life experience. What the parties wish you to do, and what is going to be required of you to take the juror's oath in good faith, is to be able to evaluate the evidence fairly and impartially, and then apply the law as provided to you by the Court and render a verdict based on those matters. And is that – are you able to do that?

PROSPECTIVE JUROR NUMBER 4: Yes, sir.

ROA.882.

confirmation that the court had granted the motion to strike Number 10 for cause. ROA.917. The district court confirmed that indeed he had.

Plains' third peremptory strike was against a female Hispanic juror who held an administrative position in the U.S. Attorneys' Office. The fact that Plains offered her legal training as a justification for striking her does not mean that the strike was not discriminatory. Based on the facts and circumstances showing a pattern of striking Hispanic jurors, including specifically Jurors Number 15 and 17 as argued below, Ramirez was deprived of a fair trial. *See Miller-El*, 545 U.S. at 265 ("It is true, of course, that at some points the significance of Miller-El's evidence is open to judgment calls, but when this evidence on the issues raised is viewed cumulatively its direction is too powerful to conclude anything but discrimination."). This Court should reverse and remand for a new trial.

**A.    Ramirez has shown that the reason given by Plains to strike Juror Number 15 was a pretext because the other prospective juror known to him was excused and could not have influenced him.**

Plains cannot and does not dispute that the other prospective juror who was known to Juror Number 15 was excused. Plains claims that Juror Number 15 was "wishy washy" because he knew one of the prospective jurors on the front row (Juror Number 1) and might be influenced by her. ROA.922-ROA.923. What Juror Number 15 said was that if the other juror came to a different conclusion than he

did, he would probably reevaluate his opinion, but that he would judge the evidence independently.  ROA.825.  That is not a "wishy washy" answer.

As Ramirez pointed out, and the district court acknowledged, Juror Number 1 was excused.  ROA.923.  Therefore, there was no danger that Juror Number 15 would be influenced by her.  There is no reason to believe that Juror Number 15 would not be able to make up his mind or would be unduly influenced by any other member of the jury.

As justification, Plains also offered that, "we were trying to get to 19 and 18 who we felt we liked better."  ROA.924.  The reason Plains liked Numbers 19 and 18 better is because they had jobs.  ("…and again, you know, frankly, we liked the fact that 18 and 19 both had jobs….")  ROA.925.  This rationale does not apply to Juror Number 15 because he had a job.  ROA.825.  But it does support a finding of discriminatory intent with respect to Juror Number 17, who is also Hispanic.  As argued below, the reason given for striking Juror Number 17 was that she did not have a job.

Ramirez has met his burden to show that the reason given by Plains for striking Juror Number 15 is a pretext because his answers were not "wishy washy," and the other juror known to him was excused so could not have influenced him during deliberations.  The district court erred in denying the *Batson* challenge with respect to Juror Number 15.  This Court should reverse and remand for a new trial.

**B.      Ramirez has shown that the reason given by Plains to strike Juror Number 17 was a pretext because the fact that she left her juror questionnaire blank does not mean that she did not have a job.**

The third Hispanic prospective juror struck by Plains was Juror Number 17, Mrs. Marisol Jasmine Kent.  ROA.123.  Plains' counsel stated that he struck her because she "doesn't have a job."  ROA.924-ROA.925.  The space for occupation on Mrs. Kent's juror questionnaire was blank. ROA.926.  The fact that the field was blank does not necessarily mean that Mrs. Kent did not have a job.  It is possible that she could have been employed and chose not to fill it out, she could be a homemaker, she could be retired, she could be unemployed.  Despite having time, Plains did not ask her any questions to find out why she left that space blank on the juror questionnaire.  The fact that Plains' counsel did not ask Mrs. Kent any questions even though he had nine minutes left at the time he started asking individual questions was pointed out to the trial court.  ROA.869; ROA.926.  A party's "failure to engage in any meaningful voir dire examination on a subject the [party] alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination." *Flowers*, 139 S. Ct. at 2249 quoting *Miller-El*, 545 U.S. at 246.

Plains argues that "the absence of questions is not always indicative of pretext."  Appellee's Brief at p. 18 *citing Miller-El*, 545 U.S. at 246; *United States v. Wilkerson*, 556 F. App'x 360, 363 (5th Cir. 2014); *Woodward v. Epps*, 580 F.3d 318, 340 (5th Cir. 2009).  Also, "[w]hen the relevant employment questions were

'on the juror questionnaire, however, it does not automatically follow that absence of the questions in *voir dire* is indicative of pretext.'" *Id.. citing Woodward*, 580 F.3d at 340. That may be true, but it is indicative of pretext in this case. There is a difference between an answer on a juror questionnaire and a blank (no answer).

In *Woodward*, this Court noted that the State did not ask any questions regarding employment or prior jury service because those questions were on the juror questionnaires, 580 F.3d at 340. The State justified its strike of one of the black prospective jurors, Ms. Williams, on the fact that it did not have a written response from her. *Id.* The defendant challenged this rationale, arguing that others had failed to respond. *Id.* But Ms. Williams answered the State's question in *voir dire* about being a psychology major, "and the State asked her several questions relating to the topic." *Id.*

In contrast, as Ramirez pointed out to the district court, Plains did not ask Mrs. Kent a single question. ROA.925-926. Plains assumed that she did not have a job because she left the answer blank. Plains also offered the fact that Mrs. Kent's husband was a lease operator, and one of the facts in the case was that Ramirez had a conflict with a lease operator. ROA.925. "A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court,

can imagine a reason that might not have been shown up as false." *Miller-El*, 545 U.S. at 252.

In response, Ramirez argued that there were many other people on the panel that either work with a lease operator, work in oilfield leases, or have worked or have spouses who have worked. ROA.925. For example, Juror Number 36 was a contract pumper (aka a lease operator). He was brought in for individual questioning outside the presence of the panel, and Plains asked him no questions. ROA.908-ROA.909. Plains questioned several other prospective jurors, including a student, about their occupation. ROA.872-875. In one case, Plains even questioned a juror about her husband's occupation (Juror Number 11). ROA.875. But it asked Juror No. 17 nothing about her husband—or her job.

The Supreme Court considered similar facts in *Snyder v. Louisiana*. *See Snyder*, 552 U.S. at 482–84. In that case, a prosecutor struck a black prospective juror, Jeffrey Brooks, asserting apprehension that Mr. Brooks might be inclined to compromise the outcome of the case in favor of more quickly returning to his graduate student-teacher program. *Id.* at 482. The Court noted a disparity in the level of the prosecutors' questioning of Mr. Brooks as compared to two white jurors who also claimed scheduling conflicts. *Id.* at 481, 484. And whereas the prosecution attempted to elicit assurances from one of the white jurors about his ability to serve despite various work and family obligations, it sought no such assurances from Mr.

Brooks. *Id.* at 484. The prosecution then struck Mr. Brooks, but neither of the two white jurors. *Id.* Coupled with the implausibility of the prosecution's race-neutral justification, this disparate treatment effectively demonstrated purposeful discrimination. *Id.* at 484–85.

Even if this reason was not a pretext because it is true, it may show discriminatory intent if the Court believes that the reason offered that Mrs. Kent did not have a job is based on a stereotype of Hispanic individuals being unemployed, then the Court may conclude that Plains' strike was motivated at least in part by discriminatory animus even without a showing of pretext. See *Purkett*, 514 U.S. at 768 ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."). "The prosecution's proffer of this pretextual explanation naturally gives rise to an inference of discriminatory intent." *Snyder*, 552 U.S.at 485 (*citing Miller-El*, 545 U.S. at 252).

As recognized by the Supreme Court, "If any facially neutral reason sufficed to answer a *Batson* challenge, then *Batson* would not amount to much more than *Swain v. Alabama*, 380 U.S. 202 (1965), *overruled by Batson v. Kentucky*, 476 U.S. 79 (1986)][2]." *Miller-El*, 545 U.S. at 240. For this reason, *Batson* allows a party to rely on "all relevant circumstances" to raise an inference of purposeful

---

[2] *Batson* overruled *Swain's* previous test for determining discrimination in jury selection. *See Flowers*, 139 S. Ct. at 2240–41, for a history and comparison of *Batson* and *Swain*.

discrimination. *Id.. quoting Batson*, 476 U.S. at 96–97. A deferential standard of review "does not by definition preclude relief." *Id. quoting Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Appellate review of an alleged *Batson* challenge "is not a hollow act." *Wilkerson*, 556 F. App'x at 363 *quoting United States v. Williamson*, 533 F.3d 269, 274 (5th Cir. 2008). The district court erred in denying Ramirez's *Batson* challenge. This Court should reverse and remand for a new trial.

## II. THE TRIAL COURT'S DENIAL OF RAMIREZ'S REQUEST FOR A CAT'S PAW INSTRUCTION SERIOUSLY IMPAIRED RAMIREZ'S ABILITY TO PRESENT HIS CASE AND PROBABLY AFFECTED THE OUTCOME OF THE CASE.

The trial court erred in denying Ramirez's request for a cat's paw instruction because the requested instruction (1) was a substantially correct statement of law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim." *Wantou*, 23 F.4th at 435. This Court follows a two-step standard of review for errors in jury instructions. First, the challenging party must show that "the charge as a whole creates substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 291–92 (5th Cir. 2019) (cleaned up). Second, "even if the court finds that the jury instructions were erroneous, it will not reverse if it determines, 'based upon the entire record, that the challenged instruction could not have affected the outcome of the case.'" *Id.* at 292

quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997).

Plains relies heavily on *Wantou*, 23 F.4th at 435, in which this Court held that it was not error to deny the plaintiff's request for a cat's paw instruction. That case is distinguishable for several reasons. First, Wantou was *pro se*. 23 F.4th at 429. Second, Wantou did not come forward with sufficient evidence to support a cat's paw instruction. *Id.* at 436. Finally, Wantou's proposed instruction was confusing and internally inconsistent. *Id.*

## A.     There was sufficient evidence to support a cat's paw instruction.

There was sufficient evidence in this case to support a cat's paw instruction. David Danielson gave ultimate approval for Ramirez's termination. ROA.1045. His title was Managing Director of U.S. Trucking, and he was four levels above Ramirez. ROA.1077. Danielson cannot recall ever meeting Ramirez personally. ROA.1093. All of the decisions he made were based on the email that was forwarded to him. ROA.1093. The email contained the recommendation of District Manager Lee Oliver and listed four events going back more than two years even though the Employee Corrective Action Report (ECR) states, "Warnings are in Effect for 12 Months." ROA.2343 (PX 1).

Trucking Division Director Pierce Broach agreed with the recommendation and added his knowledge of an incident that took place 13 years before while Mr. Ramirez was working for a competitor (Oxy). ROA.1025-ROA.1026, ROA.2342.

14

Broach wrote, "I have known Camilo for a very long time…He is a nice guy and friendly and I like him a lot but we are not running a greeting service here." ROA.1026-ROA.1027, ROA.2342. Ramirez argued that this was a reference to Walmart greeters, who are stereotypically older. ROA.956; ROA.1026.

There was other circumstantial evidence of discriminatory intent on the part of the lower-level supervisors. Ramirez was 64 years old at the time of the termination and had worked for Plains for approximately 25 years. ROA.977. He was one of the two oldest drivers in the Pecos District, and they were both fired. Reyes was 74 years old. ROA.977; ROA.1094. Ramirez was replaced by a 40-year-old. ROA.1041. Ramirez's immediate supervisor Gene Durham was almost 20 years younger than him. ROA.979. Durham frequently questioned Ramirez about retiring. ROA.1203. Durham asked Ramirez if he would take a severance package, and Ramirez said yes, but Plains never offered the package. ROA.975; ROA.1203-1204. Other younger drivers were treated more favorably under nearly identical circumstances. A younger driver also locked his brakes and was not fired. ROA.1032-ROA.1035. There was sufficient evidence to support a cat's paw instruction.

**B.    Ramirez requested a cat's paw instruction in substantially correct form.**

Ramirez requested a cat's paw instruction in substantially correct form based on this Court's pattern jury instructions. ROA.668; ROA.725 citing United States

Court of Appeals Fifth Judicial Circuit, Pattern Jury Instructions (Civil Cases) 2020 (June 2020 Revision) § 11.7.  At least, Plains makes no complaint about the wording of the instruction as requested.

### C.     The absence of the cat's paw instruction probably affected the outcome of the case.

The absence of the cat's paw instruction probably affected the outcome of the case because Plains argued that Ramirez had to prove discriminatory intent on the part of the ultimate decisionmaker, David Danielson.   Plains began its closing argument, "And this case is simple. The question is whether Plains discriminated against Plaintiff because of his age.  More fundamentally, whether Mr. Danielson discriminated but for his age.  Because Mr. Danielson is the only person that made that decision.  That's it.  That's the only way Plaintiff can win this case."  ROA.1452. Counsel continued, "You heard testimony from Mr. Danielson that he considered the facts…You heard testimony that he never considered Plaintiff's age, and he didn't even know Plaintiff's age."  ROA.1452.  Later, "The only evidence that you've actually heard from the witness stand is that Mr. Danielson did not consider the Plaintiff's age."  ROA.1453.  Also, "Lee Oliver is the one that supposedly discriminated against Plaintiff…It's important to note that Lee Oliver did not make the termination decision.  Again, David Danielson."  ROA.1459.

Further, "You heard Mr. Danielson talk about their policy.  You have a copy of their EEOC policy.  You heard him say that he did not even know Plaintiff's age

at the time. That he looked at the objective facts that were presented to him in Plaintiff's Exhibit 1, the supposed Walmart email." ROA.1462.

Counsel concluded his argument, "Plaintiff has admitted that he has no evidence that Danielson discriminated against him. He's the one that made the decision. Plaintiff cannot meet the burden that Danielson was – Danielson's decision was based upon his age. Whether the but for cause or the motivating factor, he just simply hasn't met his burden to establish that age had anything to do with it. And for that reason, we ask you to find Plains not liable. I thank you for your time." ROA.1468.

According to Justice Alito, "Where the officer with the formal decisionmaking authority merely rubberstamps the recommendation of others, the employer…has actually delegated the decisionmaking responsibility to those whose recommendation is rubberstamped." *Staub v. Proctor Hosp.*, 562 U.S. 411, 425 (2011) (J. Alito, concurring).

The failure to charge the jury on the cat's paw theory could have affected the outcome of the case because it mislead the jury into believing that Ramirez had to show discriminatory intent on the part of David Danielson, which is not the law. This Court explained the cat's paw theory as follows:

> In every case involving a cat's paw theory of causation, the ultimate
>
> decisionmaker bases his decision on a non-retaliatory reason. Indeed,

17

that is why cat's paw analysis is needed: The plaintiff cannot show that the decisionmaker harbored any retaliatory animus. But because the supervisors caused that decision through actions motivated by retaliatory animus—in effect manipulating the decisionmaker into taking what appears to the decisionmaker to be a non-retaliatory action—the employer is liable.

*Zamora v. City of Houston*, 798 F.3d 326, 332–333 (5th Cir. 2015).

If properly charged with a cat's paw instruction, a reasonable jury could have found that Ramirez was discriminated against because of his age. The district court erred in denying the cat's paw instruction. This Court should reverse and remand for a new trial.

## CONCLUSION AND PRAYER

WHEREFORE, Plaintiff-Appellant Camilo Ramirez respectfully prays that the Court reverse the district court's judgment and remand for a new trial; and for such other and further relief, at law or in equity, to which Plaintiff-Appellant Camilo Ramirez may show himself justly and lawfully entitled.

18

Respectfully submitted,

By: /s/ Holly B. Williams
      Holly B. Williams
      Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P. C.**
1209 W. Texas Ave.
Midland, TX 79701
432-682-7800; 432-682-1112 (fax)
holly@williamslawpc.com

Kyla Gail Cole
**NEILL LEGLER COLE, PLLC**
300 Oak Lawn Ave., Ste. 425
Dallas, TX  75219
214-748-7777; 214-748-7778 (fax)
kyla@nlcemployeelaw.com

**ATTORNEY FOR PLAINTIFF-
APPELLANT CAMILO RAMIREZ**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2023, an electronic copy of the foregoing reply brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit, using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system as follows:

Samuel J. Stennis
Tyler J. Eyrich
COTTON, BLEDSOE, TIGHE & DAWSON, P.C.
500 W. Illinois Ave., Sute. 300
Midland, TX 79701

                      /s/ Holly B. Williams
                      Holly B. Williams

19

## **CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4279 words, as determined by the word-count function of Microsoft Word 365, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

/s/ Holly B. Williams
Holly B. Williams

## **CERTIFICATE OF ELECTRONIC COMPLIANCE**

I hereby certify that, in the foregoing brief using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by Fifth Circuit Rule 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with the most recent version of BitDefender and is free of viruses.

/s/ Holly B. Williams
Holly B. Williams